Gloria J. HUTCHISON, Plaintiff,

v.

Otis R. BOWEN, M.D., Secretary, United States Department of Health and Human Services, Defendant.

Civ. A. No. 87–1051–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Oct. 26, 1988.

Gregory M. Wade, Alexandria, Va., for plaintiff.

Paula M. Potoczak, Asst. U.S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

*Proceedings to Date*

This is an action pursuant to 42 U.S.C. § 405(g) seeking review of the Secretary's denial of a widow's claim for disability benefits under 42 U.S.C. § 423(d)(2)(B). The claim has a tortuous procedural history that merits retelling here.

Plaintiff's husband died in January, 1983. Within two weeks, she filed a claim for widow's disability benefits under 42 U.S.C. § 423(d)(2)(B). She claimed she had been disabled since 1976 as a result of a variety of physical maladies, including breast and colon cancer, high blood pressure, a heart condition, ulcers, diabetes, glaucoma, intes-

tinal blockage and a hernia. The matter was referred to an Administrative Law Judge (ALJ). A hearing was held in January, 1984. Plaintiff, represented by counsel, appeared and testified. On the basis of the hearing, the ALJ, on May 7, 1984, concluded that plaintiff did not meet the statutory and regulatory disability standards.[1] Specifically, the ALJ concluded that plaintiff's various medical complaints were well-controlled and not of such severity as to render plaintiff disabled. This decision became the Secretary's final decision when, on October 10, 1984, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Thereafter, plaintiff filed this action in federal court. The matter was then assigned to a Magistrate. He found the requisite substantial evidence in the record to support the ALJ's conclusions rejecting plaintiff's claims of disability stemming from her physical condition.[2] From the record evidence, however, the Magistrate inferred that a severe depression may have precluded plaintiff from engaging in gainful employment for portions of 1983 and 1984. Accordingly, by decision dated March 27, 1985, he recommended a remand to the Secretary for a determination of whether a qualifying depression had persisted for a continuous period of not less than 12 months, as required by 42 U.S.C. § 423(d)(1)(A).[3]

On remand, a second ALJ held a supplemental hearing on November 11, 1985. Plaintiff, represented by counsel, was present and participated. Following the hearing, the ALJ issued a decision and recommended to the Secretary, based chiefly on a letter from plaintiff's psychiatrist, that plaintiff was totally and permanently disabled by virtue of meeting the criteria of Listing 12.04[4] and should, therefore, receive widow's disability benefits. The Appeals Council rejected this recommendation, noting that the evidence for such a conclusion was "quite sparse." *In the case of Gloria J. Hutchison,* Order of Appeals Council, July 23, 1986, at 1. In particular, the Council noted that the sparse evidence consisted "mainly [of] brief summary letters from the treating psychiatrist and one report of a psychiatric examination." *Id.* The Council went on to note that the record did not include treatment notes from either the Alexandria Health Clinic or Dr. Davies, her treating psychiatrist. *Id.* at 1–2. Based on a review of the entire record, the Council concluded that additional evidence should be obtained before taking any final action on the ALJ's recommendation. Accordingly, the Council gave plaintiff a further opportunity to submit these records as well as other supporting material. Only the Clinic records were submitted; Dr. Davies' treatment notes were not. The Council reviewed the Clinic notes and found they contained only one reference to plaintiff's depression and indicated that she attended the mental health clinic on only one occasion. The notes also disclosed that plaintiff was performing babysitting duties in 1985 and 1986, thereby raising further questions about the nature and duration of plaintiff's depression. Still finding the record inadequate, the Council withheld its final decision and remanded the matter to an ALJ for further proceedings. The ALJ then wrote the plaintiff's counsel, requesting, for the second time, Dr. Davies' treatment notes. He also solicited lay reports on plaintiff's claim of depression and arranged for plaintiff to undergo psychiatric

---

1. The statutory standard is found in 42 U.S.C. § 423(d)(2)(B). The regulations generally pertaining to Social Security disability entitlements are found in 20 C.F.R., Part 404. For the definitions of a disabling impairment as applied to a widow, *see* 20 C.F.R. § 404.1511 (1988). For the listing of qualifying impairments for each body system, *see* 20 C.F.R. Part 404, Subpart P, App. 1. (1988); *see also* 20 C.F.R. § 404.1525 (1988).

2. The Magistrate correctly concluded, therefore, that the Secretary's decision on plaintiff's physical disability claims should not be disturbed. *See Smith v. Schweiker,* 795 F.2d 343, 345 (4th

Cir.1986); *Frady v. Harris,* 646 F.2d 143 (4th Cir.1981).

3. The Magistrate also recommended that the Secretary receive additional evidence on the question of whether plaintiff's condition specifically precluded her from performing any gainful activity. This, as noted hereafter, is not the correct disability standard. *See, infra,* notes 15–16 and accompanying text.

4. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 (1988).

and psychological examinations. The examinations were performed and letters from lay sources were submitted, but so far as the record discloses, Dr. Davies' treatment notes were never submitted.

On December 10, 1986, the ALJ held yet another hearing, the third. Again, plaintiff, represented by counsel, appeared and testified, as did her son. Also testifying at the hearing was Dr. I. Adamo, M.D., who appeared in the capacity of a "medical advisor."[5] Dr. Adamo, a psychiatric specialist, reviewed the records, but did not examine plaintiff. He testified that his review of the records disclosed that plaintiff never satisfied all of the criteria defining the depression syndrome for any continuous twelve month period.[6] After reviewing the entire record,[7] the ALJ found that plaintiff suffered from a "significant depression," but that the record nonetheless did not establish specific clinical findings equivalent to those for any impairment in the Listing of Impairments set forth in Appendix 1. *See* 40 C.F.R. § 404.1525 (1988). The ALJ's thorough opinion concludes with the following findings:

> The medical evidence of record does not establish that the [plaintiff] has any impairment or combination of impairments which is medically equivalent to an impairment listed in Appendix 1 (20 C.F.R. 404.1526).
>
> The [plaintiff] was not under a "disability," as defined in the Social Security Act, at any time through the date of this recommended decision. (20 C.F.R. 404.-1578).

*In the case of Gloria Hutchison,* Decision of the ALJ, February 25, 1987, at p. 7. Based on these findings, the ALJ recommended denial of plaintiff's claim. The ALJ's findings and recommendation were adopted by the Appeals Council in its final decision dated June 15, 1987. This, in effect, is the final action of the Secretary now on review in this Court.

On return to this Court, the matter was once again referred to a second Magistrate for review and recommendation. After completing his review, this Magistrate recommended that summary judgment be entered for plaintiff. In reaching this conclusion the Magistrate wrongly assumed that the pertinent review standard was whether plaintiff has an impairment that barred her, personally, from gainful employment. He also noted that there was substantial evidence to support a finding of disability and that the Secretary had done too little to refute Dr. Davies' statements. Finally, the Magistrate rejected Dr. Adamo's testimony because he had not examined the plaintiff

---

5. Under the regulations, the ALJ may call upon a "medical advisor" for assistance in determining whether an alleged impairment exists and meets the listing criteria. *See* 20 C.F.R. § 404.1520a(d)(1)(ii) (1988).

6. *In the case of Gloria Hutchinson,* Recommended Decision of the Administrative Law Judge, dated September 25, 1987, at 3–4. The ALJ also noted that plaintiff claimed she could not work because of pain in her legs, diabetes, glaucoma, and the inability to lift anything heavy. *Id.* at 4. She did not claim, however, that depression prevented her from working.

7. The ALJ's review took into account the assessment of the various doctors who examined plaintiff. Plaintiff was seen by Dr. Guarino, a consulting physician, who diagnosed plaintiff as having a major depression without psychotic symptoms. Dr. Guarino also provided a medical assessment of plaintiff's ability to perform work-related activities. In this connection he indicated that plaintiff's ability to make occupational adjustments was between "fair" and "good." He also noted that plaintiff's ability to interact with the supervisor, deal with work stress and function independently was "fair" and that she had "good" ability to maintain attention and concentration. *See* Exhibit 61.

Plaintiff was also seen by a consulting psychologist, Dr. Levinson. He concluded that plaintiff suffered from "chronic depression and passive dependent personality." His medical assessment of plaintiff's work ability indicated that her capacity for making occupational adjustments varied from "good," regarding her ability to follow work rules, to "fair to poor" regarding her ability to relate to coworkers and to deal with the public. He indicated that while her ability to interact with supervisors was "good," her ability to deal with work stress, to function independently and to maintain concentration was "poor." *See* Exhibit 62. Another physician, Dr. Faleman, concluded that, based on her reported symptoms, plaintiff had a degree of limitation in her ability to relate to other people, a moderate degree of restriction in daily activities, a moderate degree of deterioration in personal habits and a moderately severe construction of interest. *See* Tr. 293.

and had formed his opinions based solely on a review of the records a short time prior to the hearing. It is easy to be sympathetic with some of the Magistrate's views and with his ultimate conclusion. Nonetheless, based on a review of the whole record, including hearing transcripts, briefs and decisions of the ALJ, this Court must reject the Magistrate's recommendation as based on incorrect review and disability standards. Put simply, there is ample evidence in the record to support the Secretary's decision to deny the claim. Accordingly, for the reasons stated herein, the Court grants summary judgment for the Secretary.

### Facts

Plaintiff was fifty-five (55) years of age at the time of her husband's death in January, 1983. Claiming she was disabled within the meaning of 42 U.S.C. § 423(d)(2)(B), plaintiff promptly filed for disability benefits,[8] citing a variety of physical conditions. Ample medical evidence disclosed that none of the conditions resulted in a statutory disability. Her breast cancer, for example, had been resolved through a mastectomy and had not recurred. Similarly, there was no evidence that her colon cancer had recurred. Polyps removed in 1986 were benign. The treating physician for these conditions emphasized that she could not be considered disabled in this regard. As for her reference to glaucoma, that condition, too, was not disabling under the statute or regulations. Her ophthalmologist wrote that in view of her 20/20 vision in both eyes and normal fields of vision, there was no permanent impairment from plaintiff's glaucoma. Only the hypertension and diabetes conditions were ongoing and these were treated and controlled medically. Even in this connection plaintiff's condition seemed far from disabling; one physician who examined her in July, 1983 noted "no evidence of atherosclerotic or any other type of heart disease." Quoted in *Hutchison v. Heckler*, March 27, 1985, Magistrate's Report and Recommendation, at p. 2. Not surprisingly, therefore, the first ALJ concluded that plaintiff had no physical condition which could be termed "severe"[9] or which met or equalled a listed condition.[10] This conclusion was never seriously contested.[11] Instead, at issue was plaintiff's mental condition, specifically whether her depression met the disability criteria.

The ALJ found, and the Secretary does not contest, that plaintiff suffered significant depression. At issue were the nature and duration of the depression. Contending for total disability status were chiefly Dr. Davies and the lay opinions of family and friends. The ALJ was not persuaded.[12] Instead, he found persuasive the record evidence tending to show that plaintiff's depression, while clearly significant, did

---

8. Widow's disability benefits are payable as early as age 50, provided the widow meets the requisite disability standard. *See* 42 U.S.C. § 402(e)(1)(B)(ii). A widow who is not disabled may receive benefits at age 60 under 42 U.S.C. § 402(e)(1)(B)(i). Plaintiff attained age 60 in July, 1987. Presumably, she then became eligible for these non-disability benefits and has since been receiving them. This claim, therefore, focuses on plaintiff's eligibility for disability benefits for the period February, 1983 to July, 1987.

9. A "severe" impairment under the regulations is one which significantly limits one's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a) (1988).

10. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1 (1988).

11. This conclusion was amply supported by the evidence of five physicians, Drs. Mogadam, Moon, Marak, Hoyle and Koslow.

12. In part, at least, the ALJ seemed concerned that Dr. Davies' reports were not so much treatment or clinical notes recording contemporaneous observations as conclusory summaries prepared to support plaintiff's application for benefits. The ALJ noted that his efforts, and those of the Appeals Council, to obtain Dr. Davies' contemporaneous treatment records had been unavailing. Further, the ALJ also apparently considered Dr. Davies' conclusory reports unpersuasive because they were arguably inconsistent with what the record reflected as to plaintiff's activities. Thus, the ALJ noted that during a period Dr. Davies claimed plaintiff was disabled, he only saw her once, and for at least six of those months, the record reflected that she babysat her two small grandchildren three days a week.

not meet or equal Listing level severity for any continuous twelve month period. Illustrative of this record evidence is the following excerpt from the ALJ's decision summarizing the observations of Dr. Guarino, a consulting psychiatrist, concerning plaintiff's actual activity level:

When asked about her emotional condition the claimant related some days it is real bad and although she used to cry alot, for the prior year this occurred about twice per week and she got depressed twice per week, 'mostly on weekends and it lasts for about two hours.' The claimant further related that after her husband's death in January 1983, her brother died three months later and her sister died three weeks prior to the evaluation. However, the claimant indicated she did not think of dying herself and she was close to her grandson and she 'would like to go on.' She also stated she saw him on a twice weekly basis but she still felt lonely and nervous. On mental status examination the claimant was clean, well-groomed and cooperative. She was well oriented and presented moderate anxiety and depression in terms of her mood and affect. The claimant cried easily throughout the interview but her attention span was average, she had good judgment and adequate memory and was able to do serial sevens and serial threes without error. *Concerning her activities, the claimant related she lived in an apartment by herself. She dusted and vacuumed once per week. She took out the trash, cleaned the bathroom twice per week and did dishes on a daily basis. She stated she cooked twiced [sic] per day and ate mostly cereal, or a sandwich or a TV dinner. She did laundry and grocery shopping once per week and went grocery shopping with her sister because she could not lift anything heavy. She watched television for three or four hours during the day, listened to the radio and walked a quarter of a mile on a daily basis.* She denied going

to church or going to the movies or dances, or having any hobbies. She also did not have a boyfriend but she had an older female friend with whom she visited once per week and she also talked on the telephone with her son and daughter. *On a typical day the claimant related she would get up at 7:30 in the morning, wash, get dressed, take her medication and have breakfast. She then washed dishes, made her bed, got small items from a store and visited her daughter. Sometimes she would go by to see her neighbor and watch television and she watched the news on TV. All this was performed before noon. After lunch she would talk with friends, have dinner and watch television before going to bed around 1:30 in the morning.*

*In the case of Gloria Hutchison,* Decision of the ALJ, February 25, 1987, at 3–4 (emphasis added).

The ALJ also found persuasive the evidence dealing with plaintiff's babysitting activities. The Alexandria Health Clinic notes reflect plaintiff had a babysitting job in or about April, 1985 and that she continued to do this work at least through January, 1986. In this regard, the ALJ noted:

Testimony at the supplemental hearing established that during this period the claimant babysat her grandchildren for her daughter-in-law three days per week, about four hours per day. The claimant's grandchildren were ages four and six years. The claimant indicated her daughter-in-law asked her to babysit full time, but the claimant refused because, as per testimony, she felt physically unable to keep up with the children.

*Id.* at 3. Relied on as well by the ALJ was the testimony of Dr. Adamo, a specialist in psychiatry. Dr. Adamo's testimony was based solely on a review of the record.[13] In essence, he concluded that plaintiff's mental condition never met all the criteria for any continuous twelve month period, nor did the evidence indicate any more than

---

**13.** Dr. Adamo also heard plaintiff's testimony and was given the opportunity to suggest lines of inquiry to the ALJ.

a moderate restriction in her capacity to handle and manage daily living and social activities. *Id.* at 5. Dr. Adamo also found no evidence indicating that plaintiff's ability to concentrate was so deficient as to render her unable to complete tasks. As the ALJ noted, Dr. Adamo's assessment is entirely consistent with plaintiff's actual level of activity and the conservative treatment prescribed by her treating physicians.[14] *See id.* at 5.

## Analysis

The starting point in the analysis must be the scope of review; it is clear, specific and sharply focused: The Secretary's findings are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g). It matters not that there is other evidence in the record that contradicts the Secretary's findings, or even that the record as a whole supports a conclusion contrary to the Secretary's. All that matters is whether there is substantial record evidence to support the Secretary's findings.[15] *See Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986). And "substantial evidence" in this context means more than a scintilla, but permissibly less than a preponderance. *See Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir.1972) [citing *Laws v. Celebrezze,* 368 F.2d 640 (4th Cir. 1966) ]; *accord Richardson v. Perales,* 402 U.S. 389, 402, 91 S.Ct. 1420, 1427, 28 L.Ed. 2d 842 (1971). It is sometimes said that "substantial evidence" exists where there is sufficient evidence to preclude a directed verdict where the matter is being tried to a jury. *Laws v. Celebrezze,* 368 F.2d at 642;

*see also Shively v. Heckler,* 739 F.2d 987, 989 (4th Cir.1984). Given this standard, it is pellucidly clear that the Secretary's findings against plaintiff are supported by more than the minimum quantum of substantial evidence.

Before examining the record to confirm the existence of substantial evidence, it is important to be clear about the proper disability standard. It is through the lens of this standard that the record must be examined. Contrary to plaintiff's earlier position and to the second Magistrate's position as well, the standard is not whether plaintiff's physical and mental condition barred her, given her age, education and work experience, from gainful employment; rather, the correct and more rigorous standard focuses on whether plaintiff's impairments are of such severity as to bar, not plaintiff, but "an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B). In other words, the disability judgment must be based solely on medical factors and not at all on plaintiff's particular circumstances, including age, education and work experience.[16] *See Cook v. Heckler,* 783 F.2d 1168, 1170 (4th Cir. 1986); *Dalton v. Heckler,* 789 F.2d 363 (6th Cir.1986); *Paris v. Schweiker,* 674 F.2d 707 (8th Cir.1982); *Smith v. Schweiker,* 671 F.2d 789 (3d Cir.1982); *Honaker v. Heckler,* 603 F.Supp. 1308 (W.D.Va.1985); *Medina v. Secretary,* 440 F.Supp. 292 (D.P.R. 1977). The Social Security Act is, in this connection, more restrictive when applied to a widow than to a wage earner. *See Rodriquez v. Secretary of Health and Hu-*

14. The record reflects that plaintiff's depression was conservatively managed with maintenance dosages of Elavil. It does not appear that plaintiff's treating physicians ever found plaintiff's depression sufficiently serious to warrant hospitalization or a referral to a mental health clinic.

15. In reaching his conclusion in support of plaintiff, the second Magistrate noted that there was "substantial evidence submitted to justify findings" of disability. In so doing, the Magistrate put the shoe on the wrong foot. There was, to be sure, evidence to support a finding of a qualifying disability. There was also ample evidence to support a contrary finding, and it is this evidence which the ALJ and the Secretary ultimately found persuasive. On review, the

focus should be on this evidence, and not on whether there was other evidence which would have justified a finding of disability. Similarly, the flaw in the Magistrate's conclusion is also reflected in his remark that the Secretary had done too little to refute Dr. Davies' statement.

16. *See* 20 C.F.R. § 404.1577 (1988). As the regulations make unmistakably clear, age, education and vocational factors can make considerable difference in the disability calculus. *See* 20 C.F.R. Part 404, Subpt. P, App. 2, Table Nos. 1–3 and §§ 200.00–204.00 (1988); *see also* 20 C.F.R. §§ 404.1560–404.1565 (1988) (describing effects of age, education, and work experience as factors in disability determinations for non-widow's disability benefits).

*man Services*, 647 F.2d 218 (1st Cir.1981). Under 42 U.S.C. § 423(d)(2)(A), the disability benefit standard for a wage earner includes consideration of the individual's age, education, and work experience in determining whether his physical or mental impairments prevent his engaging in any *substantial* gainful work. In sharp contrast, to win disability benefits, a widow must meet a more rigorous objective standard that excludes consideration of her age and particular vocational factors; the nature and severity of her impairment must be such as to prevent an individual from engaging in gainful employment without regard to vocational factors. Congress explicitly intended this result. *See* S.Rep. No. 744, 90th Cong., 1st Sess., *reprinted in* 1967 U.S.Code Cong. & Ad.News 2834, 2878–79; *see also Kirby v. Califano*, 432 F.Supp. 61 (E.D.Va.1977).

Examining the record through the lens of this standard discloses ample evidence to support the Secretary's findings in this case. Plaintiff undeniably experienced significant depression and bereavement. Equally undeniable is that the record medical evidence supports either of two conclusions: that the condition was an impairment of disabling severity that persisted for at least twelve continuous months or that it was not. The former conclusion finds its principal record support in the opinion of Dr. Davies and the lay opinions of family and friends. The latter conclusion is supported by, *inter alia*, (i) the record evidence of plaintiff's actual activities, (ii) the assessments of other physicians acknowledging that plaintiff had a severe depression, but indicating that she had some capacity in work related activities,[17] (iii) the conservative nature of the treatment prescribed for plaintiff, and (iv) the testimony of Dr. Adamo. Both conclusions were open to the Secretary; he could legitimately have chosen either, just as a jury is free to choose when it is presented with conflicting evidence. The Secretary chose the conclusion adverse to plaintiff, and like a jury verdict, that finding is conclusive where, as here, it is supported by evidence which would preclude a directed verdict. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984).

■ Plaintiff's position throughout has rested chiefly on Dr. Davies' opinion. Given this, it is worth reviewing some of the reasons supporting the Secretary's rejection of that opinion.[18] To begin with, as the Secretary noted, Dr. Davies' assertions in his letters were conclusory and efforts to obtain the contemporaneous treatment notes were not successful. Such conclusory assertions are of limited probative value. *See Griggs v. Schweiker*, 545 F.Supp. 475 (S.D.W.Va.1982).[19] Next, although not entirely clear, it appears that Dr. Davies' conclusion of total disability may have been

---

**17.** Illuminating in this regard is the following excerpt from plaintiff's testimony indicating that she applied for several jobs after her husband's death:

> MA [Dr. Adamo]: I was wondering if she can make a statement as to why she feels unable to work at this time.
> ALJ: All right, Mrs. Hutchison, would you like to suggest to us why it is that you believe you can't work presently?
> CLMT [Plaintiff]: Well, when he died, I did try and I don't have the education really to work and the stores I went to and put in application they never called me. And then plus the past two years with the diabetes and the legs and all the work that I did before I was married, soda fountain or cleaners, I just couldn't stand on my feet to do it, but they took the application when I filled it out like Sears and the Fanny Mae Candy Store, they never called me.
> ALJ: All right, well, you went, this was after your husband died?

CLMT [Plaintiff]: Right after he died.

**18.** *See also, supra,* note 12.

**19.** Respondent argues that given the opportunities plaintiff had to submit the treatment notes, it is not unfair to infer that if such notes existed, they would not have advanced plaintiff's cause. *Cf. United States v. Tucker*, 552 F.2d 202, 210 (7th Cir.1977) (permissive inference that if "a party fails to call an available witness [under his control] with important and relevant knowledge, it may be that he has something to fear in the witness' testimony"); *United States v. Leonard*, 524 F.2d 1076, 1083–84 (2d Cir.1975) (in criminal prosecution for filing false corporate tax returns, "defense's failure to call the [defendant's tax return] preparer could properly give rise to a negative inference whether [the defendant] had a loss"), *cert. denied*, 425 U.S. 958, 96 S.Ct. 1737, 48 L.Ed.2d 202 (1976).

**1408**

based on an erroneous standard. It is not clear whether Dr. Davies' total disability conclusion was influenced by his view of plaintiff's medical or vocational factors. At one point, for example, Dr. Davies stated that plaintiff was "totally disabled for work even before she became depressed." (Tr. 275). Also, given that plaintiff, at age 55, had not worked since 1947, her vocational factors were far from formidable. In light of the conclusory nature of Dr. Davies' assertions, it is difficult to tell whether, if at all, his focus was impermissibly blurred by these vocational factors. It is not difficult to see why the Secretary was not persuaded by Dr. Davies.[20] Whatever may have been the effect of the depression on plaintiff, conclusory assertions do not make it at all clear that the condition would have disabled any person, as the proper standard requires.

Also unpersuaded by Dr. Davies was Dr. Adamo, the psychiatrist medical advisor. As noted, Dr. Adamo testified that, while plaintiff doubtless experienced a depression syndrome, she did not meet all of the criteria for a listed impairment for any twelve month continuous period. Plaintiff attacks Dr. Adamo's testimony as unworthy of weight. She points out that Dr. Adamo never examined plaintiff and reviewed the records for only forty-five minutes prior to the hearing. To be sure, these factors may be taken into account by the ALJ and the Secretary in considering the weight to be given to Dr. Adamo's views. But they do not require that Dr. Adamo's views be accorded no weight. It is settled that the testimony of a non-examining physician may be relied upon to support a denial or an allowance of a claim for disability where, as here, that testimony is consistent with the record. *See Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986)

[citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir.1971)]. Dr. Adamo's conclusion is entirely consistent (i) with plaintiff's admitted and documented level of activity, (ii) with the conservative treatment prescribed for her, and (iii) with the assessments of other physicians concerning her ability to perform various work-related activities. His testimony, therefore, may be considered as part of the evidence supporting the Secretary's denial of benefits.

### Conclusion

The Court thus concludes that the Secretary's denial of plaintiff's claim for disability benefits is supported by substantial evidence. Plaintiff simply failed to demonstrate to the Secretary's satisfaction that her physical and mental impairments were so severe that they would prevent an individual from engaging in any gainful activity. The Secretary's decision is, therefore, affirmed. An appropriate order will be entered.

**20.** Respondent also argues that Dr. Davies' treatment of plaintiff's weight loss casts doubt on his opinion. In support of his severe depression diagnosis, Dr. Davies, in November, 1985, referred to "recent" twenty-pound involuntary weight loss (Tr. 421, 428). According to respondent, the record contradicts Dr. Davies; it shows that plaintiff's weight loss was anything but involuntary. It appears, from the record, that plaintiff dieted her way down from 198 pounds in May and June 1984 to 179½ in No-

vember, 1985. Plaintiff achieved this weight loss intentionally and succeeded in doing so only with the help of a dietician and adherence to a diet.

The record also reflects that plaintiff weighed almost 190 pounds when her husband died and 181 pounds in July, 1983. Significantly, she weighed about the same in the years prior to the husband's death, 182 pounds in July, 1979 and 183 pounds in January, 1981.