Arnita SMITH, Appellant,

v.

Richard S. SCHWEIKER, Secretary,
Department of Health and Human
Services, Appellee.

No. 85–2049.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1986.

Decided July 2, 1986.

Leah J. Seaton (Susan D. Shubin, Administrative Law Center, Legal Aid Bureau, Inc., on brief), for appellant.

Donald H. Romano, Dept. of Health and Human Services (Catherine C. Blake, U.S. Atty., Randolph W. Gaines, Deputy Asst. General Counsel for Litigation, A. George Lowe, Chief, Disability Litigation Branch, Nellie A. Hutt, on brief), for appellee.

Before WINTER, Chief Judge, CHAPMAN, Circuit Judge, and HOUCK, United States District Judge for the District of South Carolina, sitting by designation.

CHAPMAN, Circuit Judge:

This case presents the single issue of whether there is substantial evidence to support the Secretary's determination that the claimant, Arnita Smith, is not disabled as defined by the Social Security Act and thus not entitled to disabled widow's insurance benefits. Finding substantial evidence, the district court granted summary judgment for the Secretary. Smith appeals, arguing that the Secretary erred by placing undue reliance on the opinion of a consulting physician, designated by the Secretary, who had never examined her. We agree and remand the case to the Secretary for further proceedings.

I

Arnita Smith is a sixty-two year old widow with numerous physical infirmities. Mrs. Smith has a chronic myelopathy that is consistent with a chronic, progressive, and predominantly spinal form of multiple sclerosis (MS). Although a diagnosis of MS has never been confirmed, the doctors generally agree that it is a real possibility. In addition, Mrs. Smith suffers from an abnormal gait and from balance problems that make walking, bending, and lifting difficult. Because of these problems, Mrs. Smith applied for widow's insurance benefits based on disability under sections 202(e) and 223 of the Social Security Act, as amended, 42 U.S.C. §§ 402(e), 423 (1982 & Supp. II 1984).

Mrs. Smith received a hearing before an administrative law judge (ALJ) in Baltimore, Maryland. The ALJ requested an opinion regarding Mrs. Smith's disability from Dr. Desmond O'Doherty, Professor and Chairman of the Department of Neurology, Georgetown Medical Center. Dr. O'Doherty did not personally examine Mrs. Smith. After a review of the records, Dr. O'Doherty stated that he was reluctant to accept a diagnosis of MS. In addition, he noted inconsistencies in the records concerning the degree of severity of Mrs. Smith's impairments and concluded that the records did not document evidence of total incapacity. Relying in part on the opinion of Dr. O'Doherty, the ALJ determined that Mrs. Smith was not entitled to benefits. While recognizing that Mrs. Smith had a neurological disorder that could be MS and that she had a gait disorder, he found that the impairments, either singly or in combination, were not sufficiently severe to support a finding of disability under the regulations. The Appeals Council denied review on July 31, 1981.

Mrs. Smith sought judicial review of the Secretary's final decision in the United States District Court for the District of Maryland pursuant to 42 U.S.C. § 405(g) (1982). The court stated that it could not determine the weight given to the diagnosis of MS by Mrs. Smith's treating physicians and why that diagnosis did not require a finding of disability. Thus, the court remanded the case to the Secretary for specific findings from the claimant's treating physicians of whether her impairment either met or was equivalent to the MS listing in the regulations.

On remand, the ALJ received additional exhibits including records from Mrs. Smith's medical file and an opinion letter from Dr. Robert Redner, one of Mrs. Smith's treating physicians. Dr. Redner's opined that Mrs. Smith had MS which resulted in an impairment of gait and that

she was, therefore, disabled under the regulations. Dr. Redner also testified at a supplemental hearing before the ALJ. After discussing his qualifications and his experience with MS, Dr. Redner testified regarding Mrs. Smith's neurological disorders and his opinion that she has MS. However, because Dr. Redner was not a board-certified neurologist, the ALJ refused to allow him to testify regarding medical equivalency. Again, relying largely on Dr. O'Doherty's opinion, the ALJ recommended that Mrs. Smith was not entitled to widow's insurance benefits.

The Appeals Council referred the case to another consulting neurologist, Dr. M. Louis Offen, who reviewed the medical records but did not examine Mrs. Smith. Dr. Offen agreed that MS was a real possibility and stated that the medical history would have confirmed the diagnosis but for an element of uncertainty introduced by an inconsistency in the records.[1] Regardless, he found that Mrs. Smith's neurological impairment was not sufficiently severe to meet the regulations. Relying on the opinion of Dr. Offen, the Appeals Council denied benefits. The Appeals Council recognized that Dr. Redner's opinion called for careful consideration, but stated that his lesser qualifications, his lack of familiarity with the applicable regulations, and the fact that he was not designated by the Secretary should also be considered. It concluded that "the record fails to establish the degree of severity, regardless of diagnosis, contemplated in the Listings." Appeals Council Decision at 3; Tr. 124.

Again, Mrs. Smith sought judicial review. The district court found that the Secretary's decision was supported by substantial evidence and granted summary judgment for the Secretary. Mrs. Smith appeals.

## II

Our scope of review is specific and narrow. We do not conduct a *de novo* review of the evidence, and the Secretary's finding of non-disability is to be upheld, even if the court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405(g) (1982); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir.1972). Mrs. Smith contends that the decision is not supported by substantial evidence. She argues that Dr. Offen's testimony *cannot* constitute substantial evidence when it is contrary to the opinions of the claimant's treating and examining physicians and that it *does not* constitute substantial evidence in this case given the evidence in the record and the nature of the impairments at issue. We will address these points separately.

## A

█ The claimant argues that the opinion of a non-examining medical advisor cannot constitute substantial evidence in the face of the opinions of treating and examining physicians and cites *Hayes v. Gardner*, 376 F.2d 517 (4th Cir.1967), and *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905 (4th Cir.1974), in support. But that argument misstates our holdings. Those cases stand for the narrow, though important, proposition that "a non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by *all of the other evidence* in the record." *Martin*, 492 F.2d at 908 (emphasis added); *see also Hayes*, 376 F.2d at 520–21. That is not so in this case.

█ We have repeatedly emphasized the importance of the opinions of treating physicians:

While the Secretary is not bound by the opinion of a claimant's treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the

---

1. A discharge summary prepared after a 1982 hospitalization at Johns Hopkins Hospital indicated that Mrs. Smith had previously exhibited bilateral optic neuritis. Tr. 243. However, Dr. Offen observed that the report prepared when Mrs. Smith was admitted to the Johns Hopkins Neurology Service in 1979 made no mention of any previous visual disturbance and that there seemed to be no earlier records confirming a prior bilateral optic neuritis. Tr. 291.

patient's condition over a prolonged period of time. Therefore, it may be disregarded only if there is persuasive contradictory evidence. *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir.1983). Yet we have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record. *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir.1971). Furthermore, if the medical expert testimony from examining or treating physicians goes both ways, a determination coming down on the side of the non-examining, non-treating physician should stand. *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir.1984). Thus, Dr. Offen's testimony *can* constitute substantial evidence to support the Secretary's decision. To determine whether it *does* constitute substantial evidence here, we must turn to the specific facts of this case.

### B

For widow's insurance benefits, there is to be no finding of disability unless the impairments are of "a level of severity which under regulations prescribed by the Secretary is deemed to be sufficient to preclude an individual from engaging in any gainful activity." 42 U.S.C. § 423(d)(2)(B) (Supp. II 1984). In order to recover on account of a listed impairment, under the regulations, a claimant must show that she has an impairment listed in or equivalent to one listed in the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (1985). Mrs. Smith sought to establish her disability under section 11.09 of the Listing by showing MS or under 11.08 by showing spinal cord or nerve root lesions, either of which resulted in disorganization of motor function as described in 11.04 B of the Listing. The impairment in 11.04 B is a "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C)." Section 11.00 C provides that "[t]he assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms." Thus, the severity of the impairment is a critical issue.

Applying these standards, the Appeals Council found, largely on the basis of Dr. Offen's opinion, that Mrs. Smith's impairments were not sufficiently severe to meet the Listing. In response to the argument that Dr. Offen's opinion should be given little weight because he never examined the claimant, the Appeals Council stated that "personal examination is unnecessary for him to provide an opinion because he has the reports of physicians who have examined the claimant and their clinical and laboratory findings upon which to rely." Appeals Council Decision at 2; Tr. 123. While personal examination is often unnecessary, that will not be true in every case. Because of the nature of the impairment and the record in this case, we find that personal examination is necessary here.

First, an opinion or diagnosis as to an impairment of a patient's gait and station is not readily made without the physician personally examining or observing the patient. In response to interrogatories propounded prior to the Appeals Council's decision, Dr. Offen agreed that personal observation of a patient's gait is a useful method for evaluating his gait and stated that it is possible that personally seeing Mrs. Smith walk would help him evaluate her gait. He also stated: "That an individual 'uses a cane to ambulate' may not signify a true disturbance of gait, and thus *the need arises for reliable observations* by a suitably trained party." Tr. 299 (emphasis added); *cf. Narrol v. Heckler*, 727 F.2d 1303, 1306 (D.C.Cir.1984) (the court questioned the basis of a neurological opinion that the patient's gait and coordination were normal when the doctor had never seen him walk or otherwise observed his gait and coordination).

Second, the data gathered on the issue of severity, as incorporated into the record, is not readily interpreted. A comparison of

this case with *Ransom v. Heckler,* 715 F.2d 989 (5th Cir.1983), which upheld an ALJ's reliance on the opinion of a non-treating, non-examining physician, illuminates the problem. *Ransom* involved the review of a decision of the Secretary to terminate disability benefits being paid because of a spinal impairment under section 1.05 C of the Listing. In section 1.00 B, the Listing puts extensive reporting requirements on findings of impairment under 1.05 C. For example, the report must include a detailed description of the orthopedic examination findings, including the limitation of movement of the spine given quantitatively in degrees from the vertical position. There are also certain tests which are to be performed, the results of which are stated in degrees of motion before the patient suffers discomfort or pain. This type of data is objective in nature and is easily incorporated into a report in such a way that another doctor can easily understand and rely upon the report. Dr. Ernest Brownlee had examined the claimant, submitted an extensive medical report detailing his findings, and rendered a qualified opinion that Ransom's condition met section 1.05 C of the Listing. Dr. David Blacklock, a state agency medical consultant, reviewed the record and opined that the severity of Ransom's condition did not meet the Listing. The ALJ accepted the opinion of Dr. Blacklock, and the Fifth Circuit upheld that disposition.

The detail of Dr. Brownlee's report[2] was important to the court's disposition:

Dr. Brownlee's report, from which Dr. Blacklock made his equivalency determination, contains detailed descriptions of the results of appellant's examination. The detail of this report allowed Dr. Blacklock to determine that the appellant's limitation of spinal motion and motor loss were not significant, and thus to make a reasoned equivalency determination, without the need for a personal examination.

715 F.2d at 993–94 (footnotes omitted). It was on this basis that the court held that Dr. Blacklock's opinion could serve as substantial evidence to support the ALJ's findings even though Dr. Blacklock had not examined the claimant. *Id.* at 994.

In contrast, when considering the reports in this case, Dr. Offen had no such data on which to rely. The terms used to describe Mrs. Smith's impairment of gait are quite subjective. Various reports have used the terms slow, unsteady, obviously abnormal, spastic, and serious disorder. But how unsteady, how slow, how severely spastic, and how far from normal is not apparent from the reports. We do not think that a physician reviewing the reports must have objective, quantifiable medical data or that the reports must be as clear and detailed as Dr. Brownlee's report before he can rely on them. However, this case presents the opposite extreme. The language used in the reports is not conducive to the development of a non-examining physician's understanding of the claimant's condition. Yet such an understanding is critical if the non-examining physician is to form a reasoned opinion on whether the claimant's condition is equivalent to an impairment in the Listing of Impairments.

---

**2.** Dr. Brownlee's report states, in part:

Sensory examination was intact to all modalities on the left. However, on the right, there was a decrease in all modalities, vibratory, pinprick, cold, and position sense. This was noted from the head to the toe, with a marked midline change. The patient's gait was within normal limits. He had normal base and station.

. . . . .

When the patient had formal straight leg raising testing, he had exquisite pain beginning at approximately 10°. This was on both right and left. With the bent knee examination, he could tolerate to about 90° on right and left, and then had extreme pain. When sitting, the patient had minimal pain from the sitting position to 45°. He did have some tightness in his back in that encounter.

. . . . .

X-ray examination revealed the laminectomy at the level of L4 and L5 on the right. The patient was noted to have a decreased disk space at L4–L5. There was no instability or curvature of the spine noted, and there was no lilting noted.

Third, a number of the medical reports in this record are ambiguous, and even conflicting. This compounds the interpretation problem. Both Dr. O'Doherty and Dr. Offen noted that inconsistencies in the record made their evaluations more difficult. *See* Tr. 114, 291–92; *see also* note 1 *supra.* Dr. Schlott's report on December 7, 1978, characterized Mrs. Smith's gait problem as a "serious gait disorder" and stated that her gait was "obviously abnormal," Tr. 75–76, yet the report of Dr. Watson on June 9, 1982, stated that she had "*mild* spastic signs of the left leg and also with a *slight* nonspecific instability to her balance," Tr. 229 (emphasis added). Dr. Sawhney's report of December 11, 1979, states that "Mrs. Smith walked into the office ... with a qaud-cane [sic] but has been walking outside the office without any cane." Tr. 92. While we cannot expect a record to be flawless, these conflicts deal with the central issue of the severity of Mrs. Smith's impairment.

Thus, considering the nature of the impairment, the nature of the medical data, and the condition of the record, we find that Dr. Offen had an insufficient basis to make a reasoned equivalency determination without performing a personal examination. Under these circumstances, the opinion of a non-treating, non-examining physician based only upon a review of the record cannot constitute substantial evidence to support a finding of non-disability. We find, therefore, that the Secretary's finding of non-disability is not supported by substantial evidence and cannot stand.

### III

■ Even though the Secretary's decision is not supported by substantial evidence, we cannot hold as a matter of law that Mrs. Smith is entitled to benefits. Only Dr. Redner has stated that Mrs. Smith's impairment meets the Listing, but his conclusion seems to be based merely on the fact that she suffers from a disturbance of gait. In his opinion letter to the ALJ, he states: "I should think that, be-

cause of her gait disturbance, she would meet the criteria described in regulation 11.04B." Tr. 221. We agree with the district court that while there would be sufficient basis to conclude that Mrs. Smith's impairment meets the Listing if only 11.04 B were considered, Dr. Redner's conclusion cannot withstand application of 11.00 C, which is incorporated into 11.04 B and requires a consideration of the severity of the disturbance of motor function. Because there is no indication that Dr. Redner considered the severity of Mrs. Smith's impairment in reaching his conclusion, there is insufficient evidence in the record to order a finding of disability. Thus, the case must be remanded to the Secretary for further proceedings.

On remand, the Secretary should receive testimony regarding the cause and severity of Mrs. Smith's disturbance of gait and station from physicians who have examined her and have had the opportunity to observe her gait. Dr. Redner's opinion letter of November 12, 1982, Tr. 223–24, indicates that Dr. Dan Watson of the Johns Hopkins Neurology Service follows Mrs. Smith for her neurological problems, and the Secretary may wish to consider the testimony of Dr. Watson before making a further finding regarding Mrs. Smith's disability.

In sum, for the reasons stated above, we vacate the judgment of the district court and remand with instructions to remand to the Secretary for further proceedings in accordance with this opinion.

VACATED AND REMANDED.