884 F.2d 1387
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
James E. BENNETT, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary of Health & Human Services,
Defendant-Appellee.
 No. 88-3166.
 United States Court of Appeals, Fourth Circuit.
 Argued April 14, 1989.
Decided Aug. 28, 1989.
Rehearing Denied Sept. 18, 1989.
 
 Lake P. Monhollon (Juliet Walker-Rundle, Rundle & Rundle, L.C. on brief) for appellant.
 William B. Reeser (Beverly Dennis, III, Chief Counsel, Region II, Charlotte Hardnett, Chief, Social Security Litigation Division, Robert Drum, Assistant Regional Counsel, Office of the General Counsel, Department of Health & Human Services, Michael W. Carey, United States Attorney, Gary L. Call, Assistant United States Attorney, on brief) for appellee.
 Before ERVIN, Chief Judge, and WIDENER and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 James Bennett appeals from the district court's affirmance of the Secretary's denial of his claim for disability benefits under Title II of the Social Security Act, 42 U.S.C Secs. 401, et seq. Because substantial record evidence supports the Secretary's determination that Bennett retained the residual functional capacity to perform certain light or sedentary jobs we affirm.
 
 I.
 
 2
 In January of 1984, Bennett filed an application for Social Security Disability Insurance benefits alleging a disability onset date in March of 1982. His application stated that pulmonary and cardio-vascular impairments prevented his gainful employment. This application was initially denied after a hearing before an Administrative Law Judge. The ALJ found that Bennett's alleged impairments did not meet the Secretary's Listings of Severe Impairments (see 20 C.F.R. Sec. 404, Subpart P, Appendix I) (hereinafter "Listings") and that Bennett was not disabled and could return to his prior job as a heavy equipment operator. The Appeals Council declined to review this decision.
 
 
 3
 Bennett then filed suit in district court for a review of the Secretary's decision pursuant to 42 U.S.C. Sec. 405. His case was referred to Magistrate Jerry D. Hogg who found that the Secretary's decision was not supported by substantial evidence because the record did not contain the complete results of I.Q. tests administered to Bennett. Magistrate Hogg recommended that the case be remanded for further hearings to allow the introduction of evidence of Bennett's marginal intellectual capacity and reconsideration of Bennett's possible non-exertional impairments. Judge Elizabeth V. Hallanan adopted the Magistrate's recommendation and Bennett's case was remanded to the Secretary in January of 1987.
 
 
 4
 On remand, however, the Appeals Council ordered a new hearing to consider broader issues than Bennett's intellectual capacity. The Appeals Council's order correctly noted that the Magistrate was mistaken in concluding that evidence of Bennett's intellectual capacity was not in the record. In fact, Record Exhibit 26 contained the results of I.Q. tests administered to Bennett by a vocational consultant. Nevertheless the Appeals Council ordered a new hearing to obtain testimony from vocational experts about Bennett's residual functional capacity in light of evidence of Bennett's limited intellectual abilities and any other non-exertional impairments. The Appeals Council also specifically directed the ALJ to reevaluate the prior finding that Bennett could return to his prior work as a heavy equipment operator.
 
 
 5
 After this remand from the Appeals Council, ALJ Ben T. DeBerry held a second hearing on Bennett's claim and heard testimony from Bennett and from the Secretary's vocational expert, Arthur C. Ballas. ALJ DeBerry found that Bennett suffered from severe exertional and non-exertional impairments due to his cardiovascular problems, pulmonary insufficiency, and limited intellectual capacity but that none of these impairments met the Listings. He concluded that although Bennett was unable to return to his past work as a heavy equipment operator, his residual functional capacity would allow him to find employment in various light and sedentary unskilled jobs. In reliance upon the vocational expert's testimony, the ALJ suggested that Bennett could perform custodial, food service, production packaging, or bench assembly jobs.
 
 
 6
 After the Appeals Council adopted ALJ DeBerry's decision, Bennett again sought review in the district court. This time Judge Hallanan, on Magistrate Hogg's recommendation, affirmed the Secretary's denial of benefits. Bennett now appeals to this court.
 
 II.
 
 7
 The record indicates that Bennett was born on January 14, 1930. He has a fifth grade education and is functionally illiterate. In his primary past employment, Bennett worked as a heavy equipment operator in the coal industry. As a result of exposure to coal dust, he suffers from pneumoconiosis and is currently receiving black lung benefits. Bennett also worked for two years in a furniture plant. He has not worked since March of 1982. His disability insured status expired on September 30, 1982.
 
 
 8
 The objective clinical evidence in the record shows that Bennett suffers from a number of physical ailments. He has been diagnosed with high blood pressure, mild diabetes, pneumoconiosis, a hiatal hernia, and mild coronary artery disease accompanied by myocardial ischemia and prinzmetal angina. Bennett complains of oppressive chest pains, but his examining physicians have attributed these pains to his hernia and to musculoskeletal causes as well as to his coronary problems. Bennett also complains of shortness of breath, but a pulmonary study conducted by Dr. Craft in March of 1984, revealed Bennett's respiratory capacity exceeded the minimum specified by Listing 3.02.
 
 
 9
 A psychiatric evaluation conducted by Dr. McNeer in June of 1984, revealed that Bennett also suffers from mental impairments. Dr. McNeer found that Bennett suffered from moderately severe generalized anxiety disorder, moderately severe atypical depression, and atypical personality disorder. Dr. McNeer also found evidence suggesting an organic brain syndrome, possibly due to substance abuse, and mildly retarded intellectual functioning. Dr. McNeer's report concluded that "this patient is severely impaired."
 
 
 10
 A vocational evaluation conducted by Robert Williams in June of 1985, similarly revealed significant impairments. On the Weschler Adult Intelligence Scale (IQ), Bennett scored 70 verbal and 74 performance for a full scale score of 71. Bennett also scored in the lowest percentile on the Purdue Pegboard manual dexterity test. Both Williams and one other vocational counselor who evaluated Bennett found him incapable of maintaining substantial gainful employment. The Secretary's vocational expert, as noted above, disagreed with these assessments and testified that Bennett would be capable of performing tasks in light industrial, food service or custodial jobs.
 
 III.
 
 11
 At the outset, it is important to note what is and what is not at issue in this case. The Secretary suggests that our review must be limited to the issues specified in the district court's original remand order. The Secretary contends that the district court's original remand only ordered the Secretary to obtain and consider evidence about Bennett's limited intellectual capacity. Thus the Secretary argues that the sole issue for review on appeal is the severity of Bennett's intelligence related impairments. This argument is mistaken. Even assuming that the district court's instructions on remand were as circumscribed as the Secretary reads them, that order does not preclude our review of issues raised sua sponte by the Appeals Council and decided anew by the ALJ after the district court's original remand. We must thus review ALJ DeBerry's decision in its entirety, not just his findings regarding Bennett's intellectual capacity.
 
 
 12
 The familiar framework of a Social Security disability inquiry presents five questions which must be answered sequentially by the factfinder. 20 C.F.R. Sec. 404.1520a. In successive steps, an ALJ must determine (1) whether the claimant is presently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the claimant has an impairment which meets or equals a condition described in the Secretary's Listings; (4) if not, whether the claimant has an impairment which prevents the claimant from performing past relevant work; (5) if so, whether the claimant's residual functional capacity and vocational constraints such as age and experience would allow the claimant to perform substantial gainful employment. Hall v. Harris, 658 F.2d 260, 265 (4th Cir.1981); 20 C.F.R. Sec. 404.1520(b)-(f).
 
 
 13
 Bennett's appeal obviously does not challenge the ALJ's findings, with respect to steps one and two, that he was not gainfully employed and that he suffered from "severe" impairments. Nor does Bennett challenge the ALJ's conclusion, under step four, that Bennett is unable to return to his prior work as a heavy equipment operator. He does, however, challenge the ALJ's conclusion that his impairments do not meet or equal the listings and the conclusion that his residual functional capacity allows him to perform light work. The ALJ's factual determination of these questions must be upheld, though, if supported by substantial record evidence. See Smith v. Schweicker, 795 F.2d 343, 345 (4th Cir.1986).
 
 
 14
 With respect to the ALJ's step three determination, medical records from Bennett's treating physicians conclusively support the finding that none of his medical problems meet or equal the listings. Dr. Kong, who evaluated Bennett at the Duke University Medical Center in November of 1983, determined that most of Bennett's chest pain was skeletomuscular in origin and that despite some mild coronary ischemia, Bennett could return to normal activity. Dr. Craft's pulmonary function studies also revealed that Bennett suffered from mild pulmonary insufficiency but that his condition is not as severe as required by criteria specified in Listing 3.02. Finally, the ALJ was justified in concluding that the mental disorders diagnosed by Dr. McNeer were insufficient to satisfy the listings for mental impairments. Dr. McNeer's evaluation was performed nearly two years after Bennett's eligibility expired and there was no evidence to suggest that McNeer's diagnoses could be projected back.
 
 
 15
 The ALJ's step five finding that Bennett could perform certain light or sedentary unskilled jobs was also supported by the evidence. The Secretary's vocational expert, after reviewing Bennett's medical and vocational records, testified that in his opinion Bennett would be able to perform the tasks required of a custodian, food service worker, or bench assembly worker.
 
 
 16
 Finally, by way of supplemental authority, Bennett raises a novel argument regarding his borderline retarded intellectual capacity. Under Listing 12.05(C) a claimant with an I.Q. score of 60-69 inclusive on either the verbal or performance portions of the test is disabled if the claimant has "a physical or other mental impairment imposing additional or significant work-related limitations of function." As noted above, Bennett's verbal and performance scores were 70 and 73. Bennett claims that he should nonetheless be found to have met the listing's criteria since I.Q. tests have an admitted margin of error of roughly 3 points.
 
 
 17
 In support of this argument, Bennett has drawn our attention to Hines v. Bowen, 872 F.2d 56 (4th Cir.1989). In Hines the claimant's obesity was severe but was a few pounds short of Listing 10.10's criteria for gross obesity. A panel of this court remanded after the Secretary's denial of benefits. Hines is not, however, supportive of Bennett's case. Hines does not stand for the proposition that "close counts in horseshoes" as well as the Listings. The Hines court ordered a remand because, given the claimant's significant obesity, the ALJ's decision did not reflect adequate consideration of the combined effect of the claimant's obesity and her other impairments. In this case, the ALJ's questions to the vocational expert and the text of his Recommended Decision, reveal that the ALJ adequately considered the effects of Bennett's borderline retardation in determining what sorts of jobs Bennett could still perform.
 
 IV.
 
 18
 While the record reveals that Bennett does in fact suffer from a number of severe impairments, the Secretary's finding that Bennett could still obtain substantial gainful employment in various light and sedentary jobs is supported by the evidence. The district court's decision is therefore
 
 
 19
 .FIRMED.