60 F.3d 825
NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Melissa TOWNSEND, by and through her Guardian Ad Litem,
Willie May Townsend, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,
Defendant-Appellee.
 No. 94-2292.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1995.
Decided July 11, 1995.
 
 ARGUED: Jan Elliott Pritchett, THE LEE LAW FIRM, P.A., Fayetteville, NC, for Appellant. Barbara Dickerson Kocher, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, NC, for Appellee. ON BRIEF: C. Leon Lee, II, Karen B. Musgrave, THE LEE LAW FIRM, P.A., Fayetteville, NC, for Appellant. Janice McKenzie Cole, United States Attorney, Eileen Coffey Moore, Assistant United States Attorney, Raleigh, NC, for Appellee.
 E.D.N.C.
 AFFIRMED.
 Before HAMILTON and LUTTIG, Circuit Judges, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Willie Townsend (Townsend) filed an application for supplemental security income benefits on behalf of her minor daughter Appellant Melissa Townsend (Melissa), contending that Melissa was disabled because of a bilateral hearing loss. See 42 U.S.C.A. Secs. 405(g), 1383 (West 1995). Appellee, the Secretary of Health and Human Services (Secretary),* denied her claim initially and on reconsideration. Subsequently, an Administrative Law Judge (ALJ) concluded that Melissa was not entitled to benefits because, while she was hearing impaired and her hearing loss was a "severe impairment," it did not render her disabled as provided in 20 C.F.R. Sec. 416.924 (1993). The Appeals Council denied Melissa's request for review, and she filed a complaint in federal district court. The district court denied Melissa's motion for summary judgment and granted the Secretary's motion for judgment on the pleadings, see Fed.R.Civ.P. 12(c), ruling that there was substantial evidence to support the ALJ's denial of benefits. We affirm.
 
 I.
 
 2
 In determining whether a minor is entitled to benefits, the Secretary must determine whether the minor's mental or physical impairments so limit her ability to function "independently, appropriately, and effectively in an age-appropriate manner [such] that [her] impairment(s) and the limitations resulting from them are comparable to those which would disable an adult," 20 C.F.R. Sec. 416.924(a) (1993). The impairments must reduce or reasonably be expected to reduce the minor's ability to:
 
 
 3
 (1) Grow, develop, or mature physically, mentally, or emotionally and, thus, to attain developmental milestones at an age-appropriate rate; or
 
 
 4
 (2) Grow, develop, or mature physically, mentally, or emotionally and, thus, to engage in age-appropriate activities of daily living in self-care, play and recreation, school and academics, vocational settings, peer relationships, or family life; or
 
 
 5
 (3) Acquire the skills needed to assume roles reasonably expected of adults.
 
 
 6
 Id. In evaluating disability for a minor, the Secretary must consider: (1) whether the minor is engaged in substantial gainful activity; (2) whether the minor has a severe impairment; (3) whether the minor has an impairment that meets or equals the severity of an impairment listed in Appendix 1 of the Regulations; and (4) whether the impairment is of comparable severity to an impairment that would disable an adult. See 20 C.F.R. Sec. 416.924(b)-(f) (1993). With respect to the final factor, the ALJ must conduct an individualized functional assessment. See 20 C.F.R. Sec. 416.924a (1993). In making this assessment, the ALJ must evaluate the extent to which the claimant could "engage in age-appropriate activities in an independent, appropriate and effective manner" and whether she could do those things on a sustained basis appropriate to her age. See 20 C.F.R. Sec. 416.924c(a) (1993). For a claimant of Melissa's age, seventeen, the ALJ considers the following in conducting the individualized functional assessment:
 
 
 7
 (1) Descriptive information about your activities of daily living will tell us about the nature and age-appropriateness of your activities with respect to your cognitive functioning, communicative functioning, motor functioning, social functioning, and your concentration, persistence and pace in school or work-related activities.
 
 
 8
 (2) As you approach adulthood (i.e., beginning at about age 16), we will consider some of your school activities as evidence of your ability to function in a job setting. For example, we will consider your ability to understand, carry out, and remember short instructions and work-like procedures in the classroom as evidence of your ability to do these things in a job. We will consider your ability to deal with authority figures and to follow directions in school, responding appropriately to correction or criticism, an indication of your ability to deal with change in a work setting. We will consider your ability to engage in physical activities both in and out of school as it relates to your ability to perform the physical demands of work. We will also consider whether you have acquired any skills from specific vocational education and whether you have pursued any part-time or stay-in-school employment.
 
 
 9
 (3) If you are working or have worked, we will evaluate such things as: The physical activities in which you are engaged on the job; the regularity and punctuality of your attendance; your ability to follow directions and deal with supervisors; and your ability to work independently and to deal with others in your job.
 
 
 10
 20 C.F.R. Sec. 416.924c(g) (1993).
 
 
 11
 In this case, the ALJ determined that Melissa did not engage in substantial gainful activity, that she had bilateral hearing loss that constituted a severe impairment, but that she had "not established an impairment which meets or equals any of the Secretary's Listing of Impairment." (J.A. at 24). The ALJ, therefore, had to consider whether Melissa's severe impairment was of comparable severity to an impairment that would disable an adult. The ALJ concluded that Melissa's severe impairment was not of comparable severity to an impairment that would disable an adult.
 
 II.
 
 12
 The standard of review applicable to this case is limited to whether the findings of the ALJ are supported by substantial evidence. See Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence consists of more than a scintilla of evidence but may be less than a preponderance. See id. As we explained in Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984), "[i]f there is evidence to justify a refusal [to enter judgment as a matter of law] were the case before a jury, then there is 'substantial evidence.' " We must sustain the ALJ's decision, even if we disagree with it, provided it is supported by substantial evidence. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir.1986). The duty to resolve conflicts in the evidence rests with the ALJ, not the reviewing court. See Kasey v. Sullivan, 3 F.3d 75, 79 (4th Cir.1993). Our standard of review, therefore, is extremely deferential. Melissa contends that the ALJ's conclusion that her severe impairment was not of comparable severity to an impairment that would disable an adult is not supported by substantial evidence. We disagree.
 
 
 13
 The medical evidence demonstrated that Melissa had a bilateral hearing loss and no other physical abnormality. For example, in 1983, Melissa suffered a mild to profound sensorineural-type hearing loss from 1000-8000 Hz, but from 250-500 Hz she had normal hearing. On receiving hearing aids in both ears, Melissa's ability to hear greatly increased, as various doctors stated. Melissa had various hearing examinations throughout the years, all revealing essentially the same information, i.e., that she did have a permanent hearing loss at certain levels, but her hearing with hearing aids substantially improved. In 1990, Dr. Pantelakos concluded that Melissa read lips well, heard well with the hearing aids, had a good voice, but with a speech disorder characterized by omission and distortion of high-frequency consonant sounds, and she had no limitations on her ability to sit, stand, move about, or function. Another examination in September 1992 resulted in similar findings.
 
 
 14
 With respect to her functioning, substantial evidence reveals that Melissa had no limitations on her cognitive ability. Indeed, she and her mother testified that she made "As" and "Bs" in school, attended classes regularly, and had no problems in understanding directions. Melissa's English teacher, Barbara Walters (Walters), reported that Melissa's performance was "at the top of the class," she followed instructions, and her work was well above average. Although Melissa had to sit at the front of the class in order to hear, the ALJ concluded that this presented no impediment.
 
 
 15
 Likewise, there is substantial evidence to demonstrate that Melissa could function normally in daily tasks. For instance, a report by Walters stated that Melissa could concentrate and follow instructions. According to Melissa's own testimony and that of her mother, she had some friends, but not a lot, did chores around the house, and formerly sang in a choir. Other documentary evidence revealed that Melissa could take care of herself and had normal social relationships. Also, Melissa got along well with her seventeen brothers and sisters, who also helped her with her hearing impairment.
 
 
 16
 The record discloses, however, that Melissa had moderate limitations in communicative ability, as evidenced by the fact that she had a hearing loss at certain levels, but she compensated by her good ability to read lips. While Melissa's speech was adversely affected by her hearing loss, she is understandable and has benefitted from speech therapy.
 
 
 17
 We find the ALJ's conclusion that Melissa's severe impairment was not of comparable severity to an impairment that would disable an adult is supported by substantial evidence. Although Melissa suffered from moderate limitations in communicative ability, her abilities were essentially unrestricted. This conclusion is amply supported by substantial evidence. Therefore, the judgment of the district court is affirmed.
 
 AFFIRMED
 
 
 *
 On March 31, 1995, the Social Security Administration became an independent agency, separating from the Department of Health and Human Services, pursuant to Sec. 106(d)(2) of the Social Security Independence and Program Improvement Act, Pub.L. No. 103-296, 108 Stat. 1464, 1477 (1994). As of that date, Shirley S. Chater, Commissioner of Social Security, was substituted for Donna E. Shalala, Secretary of Health and Human Services. Because all of the events relative to this suit transpired prior to this change, we refer to the Secretary throughout the opinion