**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

FRED W. MILLER,
Plaintiff-Appellant,

v.

No. 95-2711

SHIRLEY S. CHATER, COMMISSIONER OF
SOCIAL SECURITY,
Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of West Virginia, at Elkins.
David L. Core, Magistrate Judge.
(CA-94-23)

Submitted: May 28, 1996

Decided: July 12, 1996

Before WIDENER, HALL, and WILKINS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Kathryn M. Schuppener, Elkins, West Virginia, for Appellant. Charlotte Hardnett, Chief Counsel, Region III, Robert S. Drum, Assistant Regional Counsel, Office of General Counsel, SOCIAL SECURITY ADMINISTRATION, Philadelphia, Pennsylvania; William D. Wilmoth, United States Attorney, Helen Campbell Altmeyer, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Fred Miller appeals the magistrate judge's order affirming a decision by the Commissioner of Social Security ("the Commissioner") to deny disability benefits under 42 U.S.C.A. §§ 405(g) and 1383(c)(3) (West Supp. 1996). Finding no reversible error, we affirm.

Miller brought this action for review of the Commissioner's final decision denying his claims for disability insurance benefits and supplemental security income. Miller filed his current application for benefits on May 14, 1991, alleging that he has been unable to work since April 22, 1985, due to headaches, vision problems, arthritis, and back problems.

The West Virginia State disability agency denied the claim initially and upon reconsideration, after two doctors and a clinical psychologist reviewed the medical evidence submitted by Miller's doctors. The agency concluded that Miller could perform work less strenuous than his past employment. Miller appealed, and had a hearing before an administrative law judge ("ALJ") at which he testified and was represented by counsel. A vocational expert and medical expert also testified at the hearing. On April 21, 1993, the ALJ issued his written decision finding that Miller was not disabled because he remained capable of performing specific light and sedentary jobs identified by the vocational expert. The Appeals Council denied Miller's request for review of the ALJ's decision, after considering additional evidence offered by Miller's representative. Thus, the ALJ's decision became the Commissioner's final decision.

Miller then brought this action in the United States District Court for the Northern District of West Virginia. The case was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(2) (1988). The Magistrate Judge found that substantial evidence sup-

2

ported the Commissioner's decision, and granted the Commissioner's motion for summary judgment. Miller timely appealed.

Miller was born on July 1, 1943. He completed the eighth grade and had no further education or vocational training. Miller's past work experience consists of twenty years in the construction industry, in which he was employed primarily as a hod carrier. Such work is classified by the Secretary as medium to heavy exertional unskilled work, and Miller has no transferable skills.

On April 22, 1985, Miller slipped and fell from a scaffold, sustaining a mild concussion and fractures of his fourth rib and both wrists. Miller was hospitalized for four days and received treatment for his injuries and diagnostic testing. Doctors discovered a benign arrhythmia which did not require treatment or impose functional limitations. Following the accident, Miller began to experience severe headaches two to three times a week, often accompanied by blurred vision.

Miller's injuries healed without complications and he was released from treatment in August 1985 by Dr. Johnson, a Board-certified neurologist. Dr. Johnson released Miller to work at his "usual and customary job." Miller complained that he still experienced headaches, but Dr. Johnson reassured Miller that he could continue working. Dr. Johnson noted in January 1986 that Miller's headache pain was alleviated by Tylenol and lying down when necessary.

In his final evaluation of Miller, Dr. Johnson observed that Miller's gait and station were unremarkable, and that his motor, sensory, cranial, and cerebellar findings were within normal limits. Dr. Johnson noted that Miller's December 1985 CT scan and EEG, as well as his own follow-up clinical examinations, were within normal limits. Dr. Johnson stated that Miller's headache syndrome was stable and that he should be able to return to some level of employment and activity. Dr. Johnson stated that, due to the subjective nature of Miller's headache symptoms, he could not delineate Miller's day-to-day capabilities.

Miller had a consultation with Dr. Sally Swisher, a Board-certified psychiatrist and neurologist, in July 1991. Dr. Swisher found no major impairments, and concluded that Miller's headaches were

3

likely tension headaches. Dr. Swisher also found no range of motion limitations. Miller was also seen by Dr. Lenore Breen, an associate professor in the Department of Neurology and Ophthalmology at the West Virginia University School of Medicine. Dr. Breen prescribed Amitriptyline for Miller's headaches, and referred him to a pain management clinic. The record contains a very brief note from Dr. Breen dated May 6, 1991, which states, "Mr. Miller is permanently disabled since an accident in 1985." Dr. Breen examined Miller again in September 1991, when Miller continued to report occasional headaches and one episode of blurred vision. Dr. Breen diagnosed Miller with "classic migraine/tension headaches," and stated that Miller tolerated his dosage of Amitriptyline well.

Miller was examined by a team of medical personnel at the pain management clinic. The team placed Miller on Cafergot and Naprosyn for treatment of post-traumatic migraine headaches. A psychological examination revealed no acute psychological distress on Miller's part. In fact, Miller presented himself to the psychologist as "managing his current headaches satisfactorily despite their chronicity." The pain management team also recommended that Miller undergo progressive muscle relaxation training to address his headaches.

In February 1992, Miller underwent a consultative psychological evaluation by Dr. William Fremouw. Dr. Fremouw reported that Miller was "currently optimistic about his future because the migraines have been improving." Dr. Fremouw did not diagnose any psychiatric condition. On May 7, 1992, Miller's treating chiropractor reported that x-rays taken in July 1991 revealed evidence of a Grade 1 spondylolisthesis resulting in a reduction of mobility in the lumbar spine. The chiropractor diagnosed lumbosacral sprain/strain, which improved after treatment with manipulation and physiologic therapeutics.

In a second examination of Miller in August 1992, Dr. Swisher reported diffuse tenderness over Miller's lumbosacral area, and a ten degree limitation in forward bending. Dr. Swisher also noted that Miller's headache syndrome had "improved somewhat" since he had begun treatment at the pain management clinic. Dr. Swisher completed a medical assessment of Miller's ability to do work-related activities. She stated that Miller was limited to lifting or carrying

4

thirty pounds occasionally, could lift ten pounds frequently, stand or walk for a total of four hours in a work day, sit fifteen minutes without interruption, and should avoid crawling. Dr. Swisher placed no limitations on Miller's ability to reach, handle, push, or pull, but restricted him from working around machinery due to his medication.

Miller sought treatment for an eye muscle weakness, exotropia, and presbyopia. The ophthalmologist reported in March 1993 that Miller's uncorrected visual acuity is 20/20 and 20/30.

The ALJ addressed each phase of the five-step evaluation process used to determine whether a claimant is disabled within the meaning of the Social Security Act. The ALJ first determined that, although Miller had attempted to work for a brief time, he had to leave that job due to his headaches, and therefore had not engaged in substantial gainful activity since his alleged onset date. The ALJ next found that Miller suffered from the following severe impairments: convergence insufficiency, presbyopia, spondylolisthesis, lumbosacral sprain, and a headache disorder. The ALJ found that Miller's arrhythmia was not a severe impairment, because it had no more than a minimal effect on Miller's ability to perform work activities.

Third, the ALJ found that none of Miller's impairments were so severe as to meet or equal the level of a listing as defined in the regulations. Fourth, the ALJ evaluated Miller's residual functional capacity to perform gainful activity. He reviewed the medical evidence of record, the testimony of the medical expert, and the functional limitations described by the examining and treating physicians. The ALJ also considered Miller's subjective complaints of pain. The ALJ concluded that Miller's chronic pain did not prevent him from performing certain light work activities. Further, the ALJ concluded that Miller retained the ability to do light work reduced by"only an occasional ability to balance, climb, stoop, crouch, kneel and crawl; chronic pain; low-average intelligence; nausea; and a visual impairment which causes him to see wiggly lines and which causes him to be sensitive to motion while riding in an automobile."

Finally, the ALJ reviewed the opinion of the vocational expert, who considered all of Miller's impairments and concluded that he would be able to work as a floor cleaner, a small parts assembler, and

5

a security guard. Because Miller retained the ability to perform a significant number of jobs which exist in the national economy, the ALJ denied Miller's claims for benefits.

We must determine whether the findings of the Commissioner are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). We will affirm the Commissioner's findings if they are supported by substantial evidence. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 390, 401. The ALJ bears the ultimate responsibility for weighing the evidence and resolving its conflicts. Hays, 907 F.2d at 1456. Miller alleges four errors to support his assertion that the Secretary's decision is not supported by substantial evidence: (1) the ALJ improperly assessed Miller's subjective complaints of pain; (2) the ALJ failed to make adequate credibility findings; (3) the ALJ failed to give proper weight to the opinion of Miller's treating physician; and (4) the ALJ improperly found that Miller is capable of light work.

A. Subjective Complaints of Pain

Miller asserts that the ALJ improperly considered the objective evidence of record in concluding that Miller's subjective complaints of pain did not preclude him from performing light work. Subjective evidence of pain, standing alone, is not conclusive evidence of disability. 42 U.S.C.A. § 423(d)(5)(A) (West Supp. 1996). When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints of pain must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective evidence of pain, if available, should be obtained and considered. However, the absence of objective medical evidence of the functional effects of pain is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). Thus, the ALJ may not render complaints of pain not credible simply because there is no objective evidence to verify the existence of the alleged pain.

6

Social Security rulings instruct an ALJ to look to the non-medical evidence of record to ensure full consideration of all of the evidence that reflects a claimant's pain. Specifically, the ALJ should consider: (1) the nature, location, onset, duration, frequency, radiation and intensity of the pain; (2) precipitating and aggravating factors; (3) type, dosage, effectiveness, and adverse side effects of any pain medication; (5) functional restrictions; and (6) the claimant's daily activities. S.S.R. 90-1p (1990).

The magistrate judge correctly found that the ALJ thoroughly considered these factors in determining whether Miller's headaches and complaints of pain prevented him from performing gainful activity. The ALJ noted that examining physicians reported that Miller's condition was improving, that his pain was alleviated by medication, that his functional limitations still allowed him to perform light work with certain restrictions, and that he performs a wide range of daily activities. The ALJ also noted that, despite Miller's complaints of back pain, he has no neurological deficits and is still able to squat, rise, and walk on heels and toes. Moreover, the ALJ noted that Miller told Dr. Fremouw that he gets migraine headaches only once per month. Finally, a disability interviewer did not observe any difficulties with walking, standing, or sitting. Based on his assessment of the evidence, the ALJ concluded that Miller has chronic pain which is noticeable at all times but which does not preclude him from being attentive to and carrying out tasks assigned to him. Upon review, the magistrate judge upheld the ALJ's evaluation of Miller's subjective complaints of pain, and we find nothing in the record to suggest that the ALJ erred in this regard.

B. Credibility Findings

Miller next asserts that the ALJ failed to make adequate credibility findings. Miller contends that the ALJ failed to state adequately his reasons for finding Miller's testimony regarding his degree of pain not fully credible. As discussed above, however, the ALJ made extensive findings regarding Miller's subjective complaints of pain and adequately set forth his reasons for finding that Miller's complaints were credible only to the extent that they prevented him from performing light work with certain restrictions. Moreover, Miller relied

7

on cases from other jurisdictions to support his argument; such authority is not binding on this court.

## C. Treating Physician's Opinion

Miller contends that the ALJ failed to give proper weight to the opinion of a treating physician. The opinion of a treating physician is entitled to great weight in a disability determination, and may be ignored only if there is persuasive contradictory evidence. Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). The ALJ's opinion must reveal the weight given to all of the evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984). If the ALJ chooses to discredit the report of the treating physician, he must fully articulate the reasons for doing so. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Miller asserts that the ALJ erred by giving little weight to an opinion rendered by Dr. Breen. That opinion consists of one sentence written on a prescription pad and addressed "to whom it may concern." The one-sentence "opinion" states that Miller was "permanently and totally disabled since an accident in 1985." The ALJ chose not to give that statement much weight because the opinion was not supported by objective findings. In fact, the record does not contain a report by Dr. Breen explaining the basis for her statement, and her treatment notes indicate that Miller's headaches were improving. The ALJ is entitled to give little weight to an opinion which is not supported by objective findings. 20 C.F.R. §§ 404.1527(d)(3) and 416.927(d)(3) (1996). Moreover, the ALJ noted that Dr. Breen's opinion was contradicted by other evidence of record, as well as the testimony of the medical advisor, who opined that there was no basis in the record for Dr. Breen's opinion. Thus, the magistrate judge properly found that the ALJ did not err in rejecting Dr. Breen's conclusory opinion.*

_____

*Similarly, there is sufficient evidence in the record to support the rejection by the Appeals Council of Dr. Hyre's statement that Miller is totally disabled.

8

D. <u>ALJ's Finding That Miller Can Perform Light Work</u>

Finally, Miller alleges that the ALJ improperly concluded that Miller is capable of performing light work. In describing Miller's residual functional capacity, the ALJ concluded that Miller was able to perform light work with certain limitations supported by the record. Aside from Dr. Breen's unsupported finding of disability, the record does not contain any specific functional findings which suggest that Miller would not be able to perform light work as described by the ALJ. Indeed, Dr. Swisher's functional capacity assessment supports the ALJ's conclusion that Miller is capable of certain light work. Thus, the ALJ's decision is supported by substantial evidence, and the magistrate judge correctly so held.

Because the ALJ's decision is supported by substantial evidence in all respects, we affirm the magistrate judge's order affirming that decision. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

9