THORNBURG, District Judge,
dissenting:
I respectfully dissent.
The issue is whether substantial evidence supports the decision of the Administrative Law Judge (ALJ) that (1) the decedent’s death was not due to pneumo-coniosis[1]; (2) pneumoconiosis was not a substantially contributing cause of his death; (3) complications of pneumoconiosis did not cause the decedent’s death; or (4) the decedent did not have complicated pneumoconiosis.
Appellant’s decedent, Raymond, was born in 1929. From July 9,1968, to March 27, 1978, he worked as a coal miner for Valley Camp Coal Company. In July 1996, he was awarded black lung benefits and he died the following April 21, 1997. Appellant filed a claim for survivors’ benefits.
At the benefits hearing, the parties stipulated the decedent had pneumoconiosis arising out of his employment as a coal miner. Thus, the only issue was whether his death was caused by, contributed to, or hastened by that condition. Section 718.205(a) of 20 C.F.R. provides for payment of benefits to eligible survivors of a miner whose death was due to pneumoco-niosis. Section 718.205(c) provides:
For the purpose of adjudicating survivors’ claims filed on or after January 1, 1982, death will be considered to be due to pneumoconiosis if any of the following *157 criteria is met: (1) Where competent medical evidence established that the miner’s death was due to pneumoconio-sis, or (2) Where pneumoconiosis was a substantially contributing cause or factor leading to the miner’s death or where the death was caused by complications of pneumoconiosis, ... (4)[s]ur-vivors are not eligible for benefits where the miner’s death ... was ... not related to pneumoconiosis, unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death.
During a hospital stay in November 1996, decedent’s medical history of chronic obstructive pulmonary disease (COPD) for the past ten years was noted as well as pneumoconiosis. Although he had been a half-a-pack per day smoker for 43 years, decedent had finally quit in 1995. In addition to these chronic ailments, the decedent also suffered from hypertension and non-insulin dependent diabetes.
Decedent was readmitted to the hospital in March and early April 1997. He returned later that month and he died on April 21, 1997. The cause of death listed on the death certificate was pulmonary arrest and no autopsy was performed.
However, decedent’s treating physician, Dr. Lenkey, opined in a report dated January 14, 1998, that the cause of death was as follows:
It is my opinion that Mr. Bureck’s lung disease was, in part[,] due to his having worked in the coal mines underground for many years. Based on his pulmonary physiologic impairment, which was 100%, approximately 50% of that is and should be attributable to his occupational related lung disease because of his long term exposure to coal dust during a time period when many safety provisions were not taken underground. It is my best informed and educated opinion that Mr. Bureck’s death, in part, was attributable to his previous lung disease, much of which was acquired during his many years working underground.
In February 1998, Dr. Gaziano opined that pneumoconiosis was a significant contributing factor in Raymond’s death. In notes to Attorney J. Marty Mazezka on November 30, 1992, Dr. Gaziano stated: “He is fully impaired from the irreversible [pulmonary] condition. He is totally impaired due to CWP.” These notes were preceded by a detailed examination report dated May 31, 1992, and eight pages of chart and test results.
Another medical consultative case review was conducted by Dr. Garson in September 1998. He concluded that the decedent’s past employment as a coal miner had led to two respiratory diseases: pneu-moconiosis and COPD. He also acknowledged that cigarette use contributed to these diseases.
The Respondent’s expert, Dr. Altmeyer, examined the decedent in October 1994 in connection with his claim for black lung benefits.[2] Based on his 1994 examination and a review of the medical records, Dr. Altmeyer opined in February 1998 that the cause of the decedent’s death was COPD, not pneumoconiosis. Indeed, he acknowledged that if the decedent had suffered from “simple” pneumoconiosis, it in no manner contributed to his death. Instead, Dr. Altmeyer concluded his death was caused by severe airway obstruction consistent with cigarette-induced lung disease. He also opined that pneumoconiosis had not hastened decedent’s death because he was suffering from severe heart disease and congestive heart failure. See Report *158 of Robert B. Altmeyer, M.D., dated February 25, 1998.
Our Court has previously observed that “[COPD] ... is encompassed within the definition of pneumoconiosis for purposes of entitlement to Black Lung benefits.” Worth v. Southern Ohio Coal Co., 60 F.3d 173, 175 (4th Cir.1995). We have also held that where a doctor’s “stated credo is that simple pneumoconiosis does not ‘as a rule’ cause total disability ... it is perfectly reasonable to discredit [that] expert’s conclusion ... [because] that expert bases his conclusion on a premise fundamentally at odds with the statutory and regulatory scheme.” Thorn v. Itmann Coal Co., 3 F.3d 713, 718-19 (4th Cir.1993). Dr. Altmeyer’s adamant denial that decedent had pneumoconiosis, despite the parties’ stipulation that he did, renders his opinion based on a “premise fundamentally at odds with the statutory and regulatory scheme.” Id. Moreover, it shows a clear bias against the claimant. See also Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 760 n. 7 (4th Cir.1999) (doctor’s testimony that “simple pneumoconiosis cannot cause, substantially contribute to, or hasten death” amounts to a belief that no one is entitled to benefits under the Black Lung Act). Cf. Dr. Altmeyer’s Report, supra (“There is no evidence this man had pneumoconiosis.”); Deposition of Robert B. Altmeyer, M.D., at 66 (“I have never seen simple coal-worker’s pneumoconiosis significantly contribute to death.” ... “But in general, you don’t believe that a simple coal-worker’s pneumoconiosis can be sufficiently impairing to make a death significantly related to it?” ... “A simple coal-worker’s pneumoconiosis, in general, I agree with that statement.”). Disregarding the stipulation and concluding the decedent did not have the disease calls into question the value of the doctor’s entire testimony. Grigg v. Director, OWCP, 28 F.3d 416, 419 (4th Cir.1994) (holding that the opinion disregarding disability causation of a doctor who erroneously fails to diagnose pneu-moconiosis is not worthy of enough weight to rebut the interim presumption pursuant to regulations).
As noted above, the conclusion that decedent was not a pneumoconiosis victim was not a new position for Dr. Altmeyer. In 1996 when ALJ Tierney awarded benefits contrary to Dr. Altmeyer’s findings, the order read in part as follows:
There are three physicians who found that the claimant has coal workers’ pneumoconiosis as a result of coal mine employment. All agree that the disease substantially contributes to his disability.
The opinions of Drs. Lenkey, Gaziano and Del Vecchio are very similar. All found pneumoconiosis in spite of negative x-rays. All found the claimant’s coal workers’ pneumoconiosis to be a significant contributing factor to his disability. All considered the claimant’s long smoking history.
Only Dr. Altmeyer disagrees. He says that the claimant’s condition is significantly related to smoking. He points to the claimant’s] long standing smoking history.
The majority of well-reasoned medical opinions from the doctors covering the period 1986 through 1995 is that the claimant has pneumoconiosis caused by coal mine employment and that it is disabling. Dr. Altmeyer’s sole dissenting opinion cannot be given controlling weight.
App., at 3. The final order denying death benefits, which gave rise to this appeal, completely ignores the factual basis for the previous determination of disability and entitlement. ALJ Lesniak discredited the opinions of Drs. Lenkey and Gaziano (two of the three doctors relied on in the quoted *159 opinion) as well as a third doctor, Dr. Warfield Garson, all giving opinions contrary to that of Dr. Altmeyer. It is passing strange that ALJ Lesniak is impressed by the fact that “Dr. Altmeyer is board certified in pulmonary and internal medicine,” but makes no mention of the same board certification held by Dr. Lenkey. Where the treating physician has the same credentials as an opposing expert, it is arbitrary to dismiss his opinion without considering his ten-year history of treatment of the decedent. Nor was the ALJ impressed that Dr. Altmeyer had never found any miner disabled due to coal worker’s pneumoconiosis. Altmeyer Deposition, at 80, 16. Moreover, Dr. Altmeyer labored under several factual errors. He did not know that decedent had quit smoking well before his death. Id., at 69. He thought the decedent’s exposure to coal dust was limited to a six month period. And, he failed to note the decedent’s condition of cor pulmonale (CP), a cardiovascular disease associated with pneumoconiosis as an end-stage complication. Mancia v. Director, OWCP, 130 F.3d 579, 585 (3rd Cir.1997). Contrary to conclusions of three other physicians, Dr. Altmeyer alone found no evidence “that this man’s death was due to pneumoconiosis.” See Altmeyer’s Report, at 3.
The ALJ’s reliance on one doctor’s opinion who denies the existence of the disease to which the parties stipulated and which was found by every other doctor, is not a valid basis for benefits denial. See Report of J.J. Del Vecchio, dated September 30, 1986, Director’s Exhibit 19 (finding CWP, COPD, small airway disease and moderate air trapping); Report of Michael B. Kovalick, dated March 26, 1997, Director’s Exhibit 9 (finding decedent to have history of black lung disease, emphysema and discharge diagnoses of acute hypercapneie and hypoxemic respiratory failure). See also Milburn Colliery Co. v. Hicks, 138 F.3d 524 (4th Cir.1998) (finding error in ALJ’s failure to examine all the relevant evidence and discounting physician qualifications).
Nor may a treating physician’s opinion be ignored.
While the [Board] is not bound by the opinion of a claimant’s treating physician, that opinion is entitled to great weight for it reflects an expert judgment based on a continuing observation of the patient’s condition over a prolonged period of time. Therefore, it may be disregarded only if there is persuasive contradictory evidence. [W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.
Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir.1986) (citations omitted). Appellant has amply supported her entitlement to benefits by substantial evidence and should be granted same.
Claimants need not prove entitlement beyond a doubt, but rather by a simple preponderance of the evidence. Assessment of the complexities of human health and disease defies death-and-taxes confidence.... [Dr. Lenkey] said that pneumoconiosis “could be considered a complicating factor in the demise of Mr. [Bureck]”.... In the full context of his report and of the gross observations he alone [as the treating physician] made, the reasonableness of such a reading is even clearer. [Dr. Lenkey] was plainly impressed by both the severity of [Bu-reck’s] pneumoconiosis and by the respiratory failure that ushered [Bureck] through death’s door.
Piney Mountain Coal Co., 176 F.3d at 763.
For the foregoing reasons, I conclude that the ALJ’s decision is not supported by substantial evidence. I would, therefore, reverse and remand for entry of a final *160 order requiring payment of benefits to Appellant; or, in the alternative, reverse and remand directing the Board to remand to a new ALJ with instructions to review the record and, if deemed necessary, to hold an additional hearing to determine whether Appellant is entitled to benefits.

. Pneumoconiosis, commonly known as black lung disease, is a chronic dust disease of the lungs, including respiratory and pulmonary impairments arising therefrom. 20 C.F.R. § 718.201.

. Decedent, who applied for black lung benefits as early as 1992, was awarded benefits in July 1996 despite Dr. Altmeyer's opinion that he did not have pneumoconiosis.