**Loreeta Carole ROGERS, Plaintiff,**

v.

**Joanne B. BARNHART, Commissioner of Social Security, Defendant.**

No. 2:01CV231–C.

United States District Court,
W.D. North Carolina,
Bryson City Division.

May 23, 2002.

Russell R. Bowling, Franklin, NC, for plaintiff.

Paul B. Taylor, U.S. Atty., Asheville, NC, for defendant.

## MEMORANDUM OF DECISION

COGBURN, United States Magistrate Judge.

THIS MATTER is before the court pursuant to 28, United States Code, Section 636(c) and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered those motions and reviewed the pleadings, the court enters the following findings and conclusions. A judgment reflecting such conclusions is being entered simultaneously herewith.

## FINDINGS AND CONCLUSIONS

### I. Administrative History

On January 8, 1998, plaintiff filed an application for supplemental security income benefits ("SSI"), alleging disability since that date, based on carpal tunnel syndrome, fibromyalgia, stress, and mitral valve prolapse. Plaintiff's application was denied initially and upon reconsideration; thereafter, she requested a hearing on March 17, 1999. A hearing was conducted before an administrative law judge ("ALJ") on July 13, 1999, at which plaintiff was represented by counsel, appeared, and gave testimony. Previously, plaintiff filed applications for supplemental security income benefits in 1993, 1995, and 1996. Those applications were not part of the review below and have not been considered in this civil appeal.

The issue before the ALJ was whether plaintiff was disabled under Section 1614(a)(3)(A) of the Social Security Act. On August 20, 1999, the ALJ issued his decision denying plaintiff's claim for SSI benefits, and the Appeals Council denied plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. Plaintiff having exhausted her administrative remedies, jurisdiction is properly laid in this court and, the matters having been fully briefed by respective counsel, the case is now ripe for disposition under 42, United States Code, Section 405(g).

### II. Factual Background

It appearing that the ALJ's findings of fact are supported by substantial evidence, the court adopts and incorporates those findings herein as if fully set forth. In order to aid further review, a summary of those findings follows.

At the administrative level, plaintiff contended that she was unable to engage in gainful employment due to a combination of both exertional and nonexertional impairments, including carpal tunnel syndrome, fibromyalgia, stress, and mitral valve prolapse. Plaintiff testified that she has not worked since her alleged onset date.

Plaintiff presented evidence that she has suffered from fibromyalgia since about 1997; takes pain medication, which sometimes upsets her stomach or makes her sleepy; becomes fatigued when she does a lot of work around the house, like washing clothes; suffers from memory, attention, and concentration deficits; and endures pain due to migraine headaches.

As to daily activities, plaintiff testified that she occasionally goes grocery shopping, but that it takes her awhile to recover. Further, she testified that she does not wash dishes anymore based on her doctor's diagnosis of carpal tunnel syndrome. To ambulate, she uses a prescribed cane. In brief doses, plaintiff cooks and dusts furniture.

The ALJ also considered the medical evidence plaintiff presented, including records from Angel Medical Center, Franklin Family Practice, Dr. Brown Crosby, Asheville Pulmonary and Critical Care Associ-

ates, Dr. M.S. Choi, and the Smokey Mountain Center, which he found noted diagnoses of fibromyalgia, carpal tunnel symptoms in the hands, mild dyspnea, a distal radius fracture of the left hand, bronchitis, and some evidence of arthritis. He noted that in 1998, pulmonary function tests showed only mild obstruction indicative of mild asthma. He further found that records from Franklin Family Practice characterized plaintiff's pain as possible fibromyalgia. In addition, the ALJ noted that plaintiff participated in physical therapy at Angel Community Hospital in 1998 for treatment of her wrists.

The ALJ found that Dr. Choi, an orthopedist, noted only mild paresthesia and weakened hand grip, but documented an *absence* of any neck and shoulder pain or any radicular discomfort, classifying the right carpal tunnel as "borderline." On follow-up, Dr. Crosby of Asheville Hand Center did not recommend surgery for the plaintiff's carpal tunnel syndrome.

The ALJ also considered a January 1999 opinion letter written by Dr. W.K. Kleinsteuber, who discussed his findings as to plaintiff's residual functional capacity. Dr. Kleinsteuber found that plaintiff could sit for about 30 minutes before experiencing any significant lower extremity numbness; could walk from 5 to 10 minutes at a time and stand for about 10 minutes at a time before she had any lower extremity problems; had no significant problems in her ability to handle objects; had no impairments of sight or hearing; and had no mental impairment. He also found that she was able to understand and had good memory, sustained concentration, and persistence—all with observed normal social interactions.

The ALJ compared Dr. Kleinsteuber's January 1999 opinion letter with a residual-functional-capacity-assessment form Dr. Kleinsteuber completed in July 1999. As a result of that comparison, the ALJ determined that the two documents were inconsistent. He found that in July 1999 Dr. Kleinsteuber opined that plaintiff could sit for only 10 minutes without interruption, whereas he had earlier found that time to be 30 minutes, and added that plaintiff could sit for only 60 minutes total in an entire 8–hour workday. Dr. Kleinsteuber was of the opinion that plaintiff could lift and carry about 5 to 10 pounds at a time. The ALJ found that the total limitation for stand/walk of 30 minutes per 8–hour day was added without any rationale and that Dr. Kleinsteuber failed to explain his reasons for limiting plaintiff to very short periods of time to stand, walk, and sit during an entire 8–hour workday. The ALJ concluded that the July 1999 residual-functional-capacity-assessment from was "less than persuasive" on the issue of plaintiff's residual capacity for work.

The ALJ also considered plaintiff's allegations of disabling pain. After setting forth the correct standard for evaluating pain, the ALJ considered plaintiff's objective medical and physiological records, the diagnoses of examining physicians, and plaintiff's own subjective complaints of pain and work-limiting discomfort. In determining that plaintiff's subjective complaints were exaggerated and not credible, the ALJ found that the record did not show any frequent, radicular, severely intense pain of a disabling degree. While conceding that a number of plaintiff's doctors diagnosed fibromyalgia-like discomfort, some carpal tunnel symptoms, and some evidence of arthritis, he concluded that none of the medical records reflected pain as being severe, intense, intractable, or disabling.

The ALJ also considered plaintiff's list of medications and the efficacy of those prescriptions in providing relief. First, the ALJ noted that most of the medications were prescribed by Dr. Kleinsteu-

ber. He further noted that most of the medication had been prescribed nearly a year after the alleged onset of disabling pain. In addition, the ALJ found that there was no evidence that such medications were anything less than effective in mitigating plaintiff's pain and discomfort. As to other forms of treatment, the ALJ noted that plaintiff was prescribed a cane, but that there was no evidence that use of the cane related to any pain or discomfort.

The ALJ also took note of plaintiff's autonomous report of daily activities, which she filled out in 1998. She stated that she walked for exercise, did at least some of her own housework (with her children helping her with the more strenuous household chores), and was able to drive a car. The only reason she did not drive at that time, she stated, was because she did not have an automobile.

### III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir.1990). Review by this court is not *de novo, Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir.1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales, supra.* Even if the court were to find that a preponderance of the evidence weighed against the Commissioner's decision, that decision would have to be affirmed if supported by substantial evidence. *Hays v. Sullivan, supra.*

### IV. The Correct Legal Standard

Reflected in S.S.R. 90–1p and subsequent rulings, the correct standard for evaluating claims based on pain is set forth explicitly in the appellate court's decision in *Hyatt v. Sullivan,* 899 F.2d 329 (4th Cir.1990)(*Hyatt III* ), in which the court held, as follows:

> Once an underlying physical or mental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as a clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree, can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motory disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

*Id.,* at 336. In SSR 96–8p, the regulation provides that the assessment of residual functional capacity must be based on all of the relevant evidence, considering all allegations of physical and mental limitations or restrictions. When allegations of physical and mental limitations or restrictions are made, the ALJ is to consider each function separately in making an assessment of residual functional capacity. SSR 96–8p. The ALJ is obligated to consider only those limitations or restrictions which are alleged and/or based on relevant evidence. When there is no allegation of a physical or mental limitation or restriction of a specific functional capacity and no information in found in the record that there is such a limitation or restriction, the

adjudicator must consider the individual to have no limitation or restriction with respect to that functional capacity.

In his decision, the ALJ set forth and applied the *Hyatt III* standard and SSR 96–8p. As discussed above, the record reveals that the ALJ recognized and applied the correct legal standard in evaluating this particular plaintiff's subjective claims of pain.

## V. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether the court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials, but whether the decision of the ALJ is supported by substantial evidence. The court finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;
2. An individual who does not have a "severe impairment" will not be found to be disabled;
3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;
4. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;
5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. Parts 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential-evaluation process.

### C. The Administrative Decision

The ALJ determined that plaintiff was capable of performing sedentary work, which is defined as work involving lifting no more than 10 pounds, standing and walking occasionally, and sitting for a large part of the work day.

The ALJ concluded that the medical evidence indicated no physical condition that would limit plaintiff from engaging in a wide range of sedentary exertional activities on a sustained basis, as long as no constant lifting and carrying or overhead lifting was involved, and if she were able to have a sit-and-stand option at work. While the ALJ found some evidence of a nonexertional impairment resulting in moderate pain, he concluded that there was no evidence that the severity significantly eroded plaintiff's occupational base at the sedentary level of exertion.

At the fourth level of the sequential-evaluation process, the ALJ considered plaintiff's work history. He determined that she had no history of long-term work and concluded that she had no significant work experience or work at the level of

"substantial gainful activity." The ALJ found that plaintiff could not perform her past relevant work because she had no past relevant work; thereafter, he noted that the burden shifts to the Commissioner to show that there are other jobs existing in significant numbers in the national economy which plaintiff can perform, consistent with her medically determinable impairments, functional limitations, age, education, and work experience.

At the fifth step of the sequential-evaluation process, the ALJ considered whether plaintiff's residual functional capacity, age, education, and past work experience would allow her to perform "other work." The ALJ noted that plaintiff retained the residual functional capacity for a wide range of sedentary work with a sit-and-stand option and with the exertional limitation noted above. The ALJ determined that plaintiff was a "younger individual" with a high-school education and a year and one-half of college, but with no past relevant work and, thus, by definition, no transferable work skills. The ALJ also considered plaintiff's subjective complaints, but based on credibility, discounted the testimony concerning the intensity and frequency of her pain. He explained his credibility determination by finding plaintiff's testimony that the level of her constant pain precluded any and all exertional activities inconsistent with the medical evidence of record.

In completing his evaluation of the fifth-step of sequential review, the ALJ utilized the "grids," specifically regulation 416.969 and Section 200.00 of Appendix 2 to Subpart P, which provided a basis for determining that plaintiff retained the capacity for other work in view of her age, education, relevant work experience, and established residual functional capacity. Section 200.00 includes administrative notice of the existence of unskilled jobs at various levels of exertion. The ALJ determined that when considering only plaintiff's exertional limitations, the findings would coincide with Rule 201.27, Table No. 1, which directs a conclusion of "not disabled." The ALJ further noted that plaintiff suffers from some nonexertional impairment in the form of intermittent moderate pain and discomfort, but that it did not reduce her residual functional capacity below the sedentary level, as long as a sit-and-stand option was maintained. The ALJ used such rule as a framework for decision making and concluded that plaintiff was not disabled within the meaning of the Social Security Act and not entitled to supplemental security income benefits.

## D. Discussion

### 1. Plaintiff's Assignments of Error

Plaintiff has made the following assignments of error:

I. New and material evidence warrants remand;

II. The ALJ erroneously concluded that plaintiff has the residual functional capacity to perform sedentary work;

III. The ALJ improperly evaluated plaintiff's subjective complaints of pain and/or plaintiff's credibility;

IV. The ALJ improperly evaluated the severity of plaintiff's mental and other nonexertional limitations.

V. The ALJ improperly disregarded the opinion of a treating physician, Dr. Kleinsteuber; and

VI. The ALJ failed to meet his burden of proving that there is other work which plaintiff can perform, and that it was error for the ALJ to fail to employ a Vocational Expert at the fifth step of the sequential-evaluation process.

Plaintiff's assignments of error will be discussed *seriatim.*

## 2. First Assignment of Error: New Evidence

■ Plaintiff first contends that new and material evidence warrants remand. It is undisputed that the evidence which plaintiff has submitted to this court first came into existence as the result of a *new* application for benefits dated August 14, 2000. The material, however, was developed prior to the Appeals Council's decision in this matter, which issued on August 3, 2001. Plaintiff apparently made no attempt to submit any of the records to the Appeals Council. Although plaintiff was aware of the requirement that new evidence must be submitted to the Appeals Council, *see* transcript, at 11, she states that her failure to submit the evidence to the Council was due to the fact that the new evidence was obtained by the Administration in another case 16 months after the ALJ's decision.

It is plaintiff's contention that remand is appropriate based on evidence which she claims is both new and material. The sixth sentence of 42, United States Code, Section 405(g) provides, as follows:

> The court may, … at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Secretary shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.

*Id.* In *Wilkins v. Secretary, Dep't of Health & Human Servs.,* 953 F.2d 93 (4th Cir.1991),[1] the Court of Appeals for the Fourth Circuit held that evidence is new if it "is not duplicative or cumulative," and is material "if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.,* at 96. *See also Borders v. Heckler,* 777 F.2d 954, 955 (4th Cir.1985). While it appears that such evidence is new, plaintiff has not shown the court good cause for her failure to present it to the Appeals Council.

In *Melkonyan v. Sullivan,* 501 U.S. 89, 111 S.Ct. 2157, 2164, 115 L.Ed.2d 78 (1991), the Supreme Court discussed the characteristics of a sentence-six remand for new and material evidence, stating that in amending the sixth sentence of Section 405(g), "Congress made it unmistakably clear" that it intended to limit remands for "new evidence." *Id.* The Court further held that Congress added the "good-cause" requirement to try to speed up the judicial process, "so that these cases would not just go on and on." *Id.* Plaintiff's failure to present such evidence to the Appeals Council is not *good cause.* Ultimately, it is plaintiff who bears the initial burden of production of evidence and the ultimate burden of persuasion. *Preston v. Heckler,* 769 F.2d 988, 990 (4th Cir.1985); *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir.1981). The court will deny the request for remand based on plaintiff's failure to show good cause for not presenting such evidence at the administrative level.

**1.** While the appellate court in *Wilkins* was addressing whether the Appeals Council properly addressed evidence which the claimant represented as new and material, the court finds the *Wilkins* definitions instructive and appropriate in the circumstances presented by this case.

### 3. Second Assignment of Error: Residual Functional Capacity for Sedentary Work & the ALJ Improperly Disregarded the Opinion of a Treating Physician, Dr. Kleinsteuber

■ The court has combined the above-headed assignments of error, inasmuch as they are inextricably intertwined. Plaintiff contends that the ALJ erroneously concluded that plaintiff had the residual functional capacity to perform sedentary work and improperly substituted his own lay opinion for the medical opinion of Dr. Kleinsteuber, who provided conclusions in his July 1999 evaluation that could have supported a finding that plaintiff was not capable of any gainful activity.

When it comes to administrative determinations of an insured's ability to work, the ALJ is solely responsible for determining the insured's residual functional capacity. While an ALJ must give great weight to evidence provided by a treating physician, the ALJ is obliged to carefully determine the weight he assigns such opinions where the opinions are inconsistent with other opinions or are not supported by clinical findings. *See* 20 C.F.R. §§ 416.927(e)(2) & 416.946 (2001). In this case, the ALJ was faced with an opinion that was materially inconsistent with an earlier opinion from the *same* doctor and that, without explanation, increased plaintiff's functional limitations.

The opinion of a treating physician may be disregarded only if there is persuasive contradictory evidence. *Mitchell v. Schweiker*, 699 F.2d 185 (4th Cir.1983).

> Objective medical facts and the opinions and diagnoses of the treating and examining doctors constitute a major part of the proof to be considered in a disability case and may not be discounted by the ALJ.

*Id.*, at 187. A treating physician is a physician who has observed the plaintiff's condition over a prolonged period of time. *Id.* Even the opinion of a treating physician may be disregarded where it is inconsistent with clearly established, contemporaneous medical records. *See* 20 C.F.R. § 404.1527(d)(4). Here, the ALJ cited the earlier contradictory evidence as one of his reasons for discounting this doctor's testimony.

Plaintiff also argues that it was error for the ALJ not to refer plaintiff for a consultative mental/medical examination. A consultative examination is only required when the Commissioner concludes that additional information is needed to determine whether the plaintiff is disabled. 20 C.F.R. § 416.919a(b). Here, there was no reason for the ALJ to order a consultative examination because there was sufficient and extensive mental-health as well as medical documentation of plaintiff's impairments. For example, Dr. Hopfenberg, in a 1998 Psychiatric Review Technique, diagnosed plaintiff with post-traumatic-stress disorder and found that she had slight restrictions to her activities of daily living and to her ability to maintain social functioning, she often had deficiencies of concentration, and she had experienced one or two episodes of decompensation. Dr. Hopfenberg further found that the only limitation the plaintiff experienced was a moderate limitation in her ability to complete a normal workday, but that she was able to perform low-stress work.

The record also contains the opinion of Dr. Breslin, who, in a 1999 Psychiatric Review Technique, noted that plaintiff's post-traumatic-stress disorder had resolved and that she no longer had any limitations to her ability to engage in activities of daily living. The results of plaintiff's only mental-health appointment indicated that she was oriented times three with no apparent psychosis, she had an appropriate affect, and her mood was in

the normal range. The record simply does not support plaintiff's argument that a consultative examination should have been ordered.

### 4. Third Assignment of Error: Improper Evaluation of Subjective Complaints

As discussed above, the ALJ recognized and applied the correct standard for evaluating subjective complaints in this district. The thrust of plaintiff's argument is that the ALJ improperly discredited plaintiff's testimony concerning totally disabling pain. In *Hatcher v. Secretary*, 898 F.2d 21, 23 (4th Cir.1989), the Court of Appeals for the Fourth Circuit held, as follows:

> [I]t is well settled that: "the ALJ is required to make credibility determinations—and therefore sometimes make negative determinations—about allegations of pain or other nonexertional disabilities.... But such decisions should refer specifically to the evidence informing the ALJ's conclusion. This duty of explanation is always an important aspect of the administrative charge, ... and it is especially crucial in evaluating pain, in part because the judgment is often a difficult one, and in part because the ALJ is somewhat constricted in choosing a decisional process."

*Id.*, (quoting *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir.1985) (citations omitted)).

■ In this case, the ALJ satisfied his duty of explanation. As discussed above in the findings section of this decision, the ALJ considered plaintiff's objective medical and physiological records, the diagnoses of examining physicians, and plaintiff's own subjective complaints of pain and work-limiting discomfort. In determining that plaintiff's subjective complaints were exaggerated and not credible, the ALJ explained that the record did not show any frequent, radicular, severely intense pain of a disabling degree. While conceding that a number of plaintiff's doctors diagnosed fibromyalgia-like discomfort, some carpal-tunnel symptoms, and some evidence of arthritis, he concluded that none of the medical records reflected pain as being severe, intense, intractable, or disabling.

The ALJ also considered plaintiff's list of medications and the efficacy of those prescriptions in providing relief. First, the ALJ noted that most of the medications were prescribed by Dr. Kleinsteuber, whose second assessment of residual functional capacity was not fully credible. In addition, he noted that most of the medication had been prescribed nearly a year after the alleged onset of disabling pain. The ALJ also found that there was no evidence that such medications were anything less than effective in mitigating plaintiff's pain and discomfort. As to other forms of treatment, the ALJ noted that plaintiff had been prescribed a cane, but found no evidence that use of the cane related to any pain or discomfort.

The ALJ also took note of plaintiff's autonomous report of daily activities, which she filled out in 1998 in temporal proximity to the alleged onset date. She stated that she walked for exercise, did at least some of her own housework (with her children helping her with the more strenuous household chores), and was able to drive a car. She stated that the only reason she did not drive was because she did not at that time have an automobile.

The ALJ concluded that plaintiff's testimony concerning subjective complaints of pain was not credible when viewed in light of the medical records, list of prescription medications, and her own testimony concerning daily activities. The ALJ did not rely only on the absence of objective medical proof of pain in making his credibility determination; rather, in conjunction with

the medical evidence, he also considered plaintiff's daily activities, including her daily medications, in determining whether her testimony was credible. When considering an almost identical method of evaluating pain in *Mickles v. Shalala,* 29 F.3d 918 (4th Cir.1994), Honorable K.K. Hall, Circuit Judge, announcing and concurring in the judgment of the Court of Appeals for the Fourth Circuit, held, as follows:

This refreshing mode of analysis is precisely what I believe our cases have been striving for. The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life.

*Id.,* 29 F.3d at 921. The ALJ did not "just rest on the absence of objective proof of pain," *id.,* at 920, but considered plaintiff's activities of daily living and the fact that plaintiff's pain medications had been unaltered. In accordance with *Mickles,* the ALJ properly discredited plaintiff's subjective complaints of pain and fully satisfied his obligation to explain his reasoning.

### 5. Fourth Assignment of Error: The ALJ Improperly Evaluated the Severity of Plaintiff's Mental and Other Nonexertional Limitations.

█ The ALJ determined that while plaintiff experienced nonexertional impairments arising from intermittent, moderate pain and discomfort, those impairments did not reduce her residual functional capacity below that for sedentary work, so long as she was able to have a sit-and-stand option. The correct inquiry is not whether the nonexertional impairment existed, but whether the impairment affected the plaintiff's ability to do work at the exertional level that she had been found capable of performing. *Baker v. Chater,* 957 F.Supp. 75, 81 (D.Md.1996). Substantial evidence supports the ALJ determinations regarding the vocational impact of plaintiff's nonexertional impairments or limitations.

### 6. Fifth Assignment of Error: The ALJ Failed to Meet His Burden of Proving that there is Other Work which Plaintiff Can Perform, and that it was Error for the ALJ to Fail to Employ a Vocational Expert at the Fifth Step of the Sequential–Evaluation Process.

Plaintiff next contends that the ALJ erred in applying the Medical–Vocational Guidelines (or "grids") at the fifth step of the sequential-evaluation process and argues that inasmuch as she suffers from nonexertional as well as exertional limitations, the ALJ should have called a vocational expert. Further, plaintiff contends that the ALJ should have stated what jobs she was capable of performing.

In *Heckler v. Campbell,* 461 U.S. 458, 470, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983), the United States Supreme Court upheld the Commissioner's promulgation of the Medical–Vocational Guidelines for use at the fifth step of the sequential-evaluation process and determined that, in appropriate cases, the Commissioner need not introduce evidence of specific available jobs. The Court of Appeals for the Fourth Circuit has subsequently held that the Medical–Vocational Guidelines may be used to direct a finding of either "disabled" or "not disabled" in cases involving exertional limitations. *Walker v. Bowen,* 889 F.2d 47, 49 (4th Cir.1989). The Fourth Circuit has also held that the mere presence of nonexertional limitations does not, *per se,* preclude application of the Medical–Vocational Guidelines, as nonexertional limitations rise to the level of nonexertional impairments and preclude the use of the guidelines only when the limitations are significant enough to prevent a wide range of gainful employment at the designated level. *Id.* Pain can be exertional, nonexertional, or a combination thereof. *Id.; see also Gory v. Schweiker,* 712 F.2d 929, 931

(4th Cir.1983) (the disability claimant's complaints of pain and leg swelling were only exertional limitations). The presence of nonexertional as well as exertional pain does not necessarily preclude utilization of the Medical–Vocational Guidelines to direct a finding of not disabled.

 The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which a particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, *Chester v. Mathews,* 403 F.Supp. 110 (D.Md.1975); and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments, *Stephens v. Secretary of Health, Education and Welfare,* 603 F.2d 36 (8th Cir. 1979). In this case, the ALJ simply was not obligated to employ a vocational expert at the fifth step of the sequential-evaluation process because plaintiff's nonexertional limitations or impairments did not rise to a level which prevented a wide range of gainful employment at the sedentary level. The ALJ specifically found that plaintiff's ability to perform sedentary work was not reduced by her nonexertional impairments, making appropriate the ALJ's use of the Medical–Vocational Guidelines as a framework for his decision.

### E. Conclusion

The court has reviewed carefully the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. *See Richardson v. Perales, supra; Hays v. Sullivan, supra.* Finding that there was "such relevant evidence as a reasonable mind might accept as ade-

quate to support a conclusion," *Richardson v. Perales, supra,* the court will deny plaintiff's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and, therefore, affirm the decision of the Commissioner.

This Memorandum of Decision is entered in response to plaintiff's Motion for Summary Judgment (# 17) and the Commissioner's Motion for Summary Judgment (# 19).