An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1130

NORTH CAROLINA COURT OF APPEALS

Filed: 21 October 2014

LISA M. TESTER,
          Petitioner,

v.                                    Watauga County
                                      No. 12 CVS 232
NORTH CAROLINA DEPARTMENT OF
HEALTH AND HUMAN SERVICES, *et al.*,
          Respondent.


Appeal by petitioner from order entered 28 May 2013 by Judge Joseph N. Crosswhite in Watauga County Superior Court. Heard in the Court of Appeals 19 March 2014.

> *Samuel F. Furgiuele, Jr., for petitioner-appellant.*
>
> *Attorney General Roy Cooper, by Assistant Attorney General Ellen A. Newby, for respondent-appellee.*


GEER, Judge.


Petitioner Lisa M. Tester appeals from an order affirming the determination of the North Carolina Department of Health and Human Services ("DHHS") that petitioner is not eligible for Medical Assistance for the Disabled ("Medicaid") because she has the residual functional capacity ("RFC") to engage in light work and is not prevented from performing her past relevant work as

an admissions supervisor. Because the determination that petitioner is not disabled is supported by substantial evidence and was not made upon unlawful procedure, we affirm.

## Facts

At the time of the hearing before the DHHS hearing officer, petitioner was 44 years old. She had graduated from high school and worked as an "admissions supervisor" at Watauga Medical Center from 1985 through 1998. That job involved skilled labor and sedentary maximum sustained work.

Petitioner applied for Medicaid on 14 July 2011 through the Watauga County Department of Social Services ("DSS"). DSS denied petitioner's request for Medicaid on 5 October 2011. Petitioner appealed the denial to DHHS on 18 October 2011. On 26 January 2012, following an evidentiary hearing, the DHHS hearing officer issued a decision affirming the denial of Medicaid.

The hearing officer found that petitioner has a diagnosis and complains of Crohn's disease, abdominal pain, headaches/migraines, high blood pressure, pancreatitis, reflux disease, ulnar nerve lesion, stress, low immune system, asthma, and arthritis. The hearing officer concluded that these impairments "are severe but do not meet or equal the level of severity specified in 20CFR [sic] Part 404, Appendix 1 to

Subpart P (Listing of Impairments)." Considering the combination of all of petitioner's impairments and related symptoms, the hearing officer next concluded that petitioner has the RFC to engage in light work and that petitioner's impairments and related symptoms did not prevent her from performing her past relevant work as an admissions supervisor, at least as the job is generally performed in the national economy.

Based upon these findings, the hearing officer concluded that petitioner does "not meet the disability requirement specified in 20 CFR 416.920(g) and therefore is not found disabled or eligible for Medicaid." Petitioner appealed the decision to the Chief Hearing Officer, and a Final Agency Decision was issued on 21 March 2012 affirming the hearing officer.

Petitioner filed a petition for judicial review of the Final Agency Decision in Watauga County Superior Court. The court reviewed the administrative record and concluded that the hearing officer's findings of fact were supported by substantial evidence in the record and that the hearing officer utilized the proper procedures for determining that petitioner is not disabled. The court entered an order affirming the Final Agency

Decision on 28 May 2013. Petitioner timely appealed to this Court.

### Discussion

Review of an agency decision denying a claim for Medicaid is governed by the North Carolina Administrative Procedures Act. N.C. Gen. Stat. § 108A-79(k) (2013). Generally, when reviewing a superior court's order on appeal from a final agency decision, this Court is "required to 'examine[] the trial court's order for error[s] of law' by '(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether the court did so properly.'" *Gray v. N.C. Dep't of Env't, Health & Natural Res.*, 149 N.C. App. 374, 379, 560 S.E.2d 394, 398 (2002) (quoting *Amanini v. N.C. Dep't of Human Res.*, 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994)).

"The applicable standards of review under the APA are that '[q]uestions of law receive *de novo* review, whereas fact-intensive issues such as sufficiency of the evidence to support [an agency's] decision are reviewed under the whole-record test.'" *Meza v. Div. of Soc. Servs.*, 364 N.C. 61, 69, 692 S.E.2d 96, 102 (2010) (quoting *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 659, 599 S.E.2d 888, 894 (2004)).

> When conducting de novo review, the reviewing court consider[s] the matter

anew[] and freely substitutes its own judgment for the agency's. However, when applying the whole record test, the reviewing court may not substitute its judgment for the agency's as between two conflicting views, even though it could reasonably have reached a different result had it reviewed the matter *de novo*. Rather, a court must examine all the record evidence -- that which detracts from the agency's findings and conclusions as well as that which tends to support them -- to determine whether there is substantial evidence to justify the agency's decision. Substantial evidence is defined as relevant evidence a reasonable mind might accept as adequate to support a conclusion.

*Id.* at 69-70, 692 S.E.2d at 102 (internal citations and quotation marks omitted).

In this case, petitioner challenges DHHS' conclusion that she is not disabled. Disability is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505 (2014).

In order to determine whether a claimant is disabled, DHHS employs a five-step sequential analysis:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2.  An individual who does not have a "severe impairment" will not be found to be disabled;

3.  If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4.  If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5.  If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

*Rogers v. Barnhart*, 204 F. Supp. 2d 885, 890 (W.D.N.C. 2002) (summarizing 20 C.F.R. § 404.1520(b)-(f)). The burden of proof is on the claimant with respect to the first four steps of the inquiry, but shifts to the agency in step five. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

In this case, there is no dispute as to steps one through three of the analysis. DHHS concluded that petitioner is not currently engaging in substantial gainful activity and has severe impairments that meet the durational requirements in 20

C.F.R. § 416.909 (2014), but are not severe enough to meet or equal a listed impairment in Appendix 1 of Subpart P.

However, petitioner challenges DHHS' analysis regarding step four, including its determination of petitioner's RFC and its finding, based on her RFC, that petitioner is capable of performing work she had done in the past. With respect to step four, the hearing officer found, based on the evidence in the record and "[c]onsidering the combination of all impairments and related symptoms," that petitioner has the RFC to engage in "light work." The hearing officer further found that petitioner was, given her RFC, able to perform her past work as an admissions supervisor.

Petitioner first argues that in making this determination, DHHS failed to give proper weight to the expert opinions of petitioner's treating physicians. Petitioner points to a January 2012 letter from Dr. Peter J. Haibach, who had been petitioner's treating physician for 25 years, stating "[b]ecause of chronic health problems of Crohn's Disease, Crohn's associated arthritis, asthma and morbid obesity[,] Ms. Tester is clearly unable to undertake gainful employment." In addition, one of petitioner's other doctors, Dr. John Whitlock, wrote in an April 2011 report that "[u]nfortunately I think [petitioner] is disabled to gainful employment . . . ." Citing 20 C.F.R. §§

404.1527 and 416.927, petitioner argues that these opinions were entitled to controlling weight. We disagree.

Under 20 C.F.R. § 416.927(c) (2014),[1] when determining the weight to be given a medical opinion, the hearing officer is required to consider various factors, including whether the doctor examined the petitioner, whether the doctor was the petitioner's treating physician, the supportability of the doctor's opinion, consistency of the opinion with the record as a whole, and any specialization of the expert. Generally, more weight will be given to a treating physician who has established a relationship with the patient over a long period of time. *Id.*

"Although the treating physician rule generally requires a court to accord greater weight to the testimony of a treating physician, the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam), *superseded by regulation in nonrelevant part*, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2012). However, when the treating physician's opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other

---

[1]Effective 26 March 2012, 20 C.F.R. § 416.927 was amended so that the provisions previously designated as subparagraph (d) at issue in this appeal became subparagraph (c), although the text remained unchanged. *See How We Collect and Consider Evidence of Disability*, 77 FR 10651, 10657. For clarity, we cite to the current version of the regulation.

substantial evidence in [the] record," they will be given controlling weight on the issues of the nature and severity of the impairment. 20 C.F.R. § 416.927(c)(2); *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996) ("It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.").

With respect to an issue reserved to the Social Security Commissioner, a treating physician's opinion is not afforded greater weight or any special significance. 20 C.F.R. § 416.927(d). A claimant's RFC is a determination reserved to the Social Security Agency:

> (1) *Opinions that you are disabled.* We are responsible for making the determination or decision about whether you meet the statutory definition of disability. In so doing, we review all of the medical findings and other evidence that support a medical source's statement that you are disabled. *A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled.*
>
> (2) *Other opinions on issues reserved to the Commissioner.* We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical

> sources on issues such as whether your
> impairment(s) meets or equals the
> requirements of any impairment(s) in the
> Listing of Impairments in appendix 1 to
> subpart P of part 404 of this chapter, *your
> residual functional capacity* (see §§ 416.945
> and 416.946), or the application of
> vocational factors, the final responsibility
> for deciding these issues is reserved to the
> Commissioner.

*Id.* (emphasis added).

Here, the hearing officer acknowledged the opinions of Dr. Whitlock and Dr. Haibach in Finding of Fact 6 and stated that she considered their opinions in accordance with 20 C.F.R. § 416.927. As an initial matter, the hearing officer properly noted that the opinions were not entitled to special weight because the doctors were expressing opinions on matters -- petitioner's RFC and disability -- reserved for decision by the Commissioner. Further, the hearing officer concluded that those opinions were also entitled to little weight because they are "not descriptive as to why [petitioner] is unable to work and state[] no restrictions [petitioner] would have nor the reasons for the restrictions." Under 20 C.F.R. § 416.927(c)(3), called the "supportability" factor, "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." Thus, in this case, the hearing officer, consistent with the applicable regulations, relied upon the

doctors' opinions' lack of "supportability" in determining to give those medical opinions little weight.

We disagree with petitioner's contention that the hearing officer improperly interposed herself as a medical expert when she discredited Dr. Haibach's opinion on the basis that "[t]here are no imaging studies in the available medical records that show any significant arthritis in her joints." This finding is relevant to the factor of supportability and is consistent with 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A § 1.00(C)(1), which provides that "diagnosis and evaluation of musculoskeletal impairments should be supported, as applicable, by detailed descriptions of the joints, including ranges of motion, condition of the musculature (e.g., weakness, atrophy), sensory or reflex changes, circulatory deficits, *and laboratory findings, including findings on x-ray or other appropriate medically acceptable imaging*." (Emphasis added.)

Petitioner also argues that the hearing officer improperly ignored Dr. Julie L. Colantoni's opinion that she had functional limitations as a result of her frequent bathroom visits. We believe that petitioner has misinterpreted Dr. Colantoni's opinion. Dr. Colantoni's 17 September 2011 medical report noted:

> With regards to her Crohn disease, she has had multiple surgeries and this is a

> lifelong disease that could affect her in
> the future. As of right now, besides having
> some abdominal pain and frequently going to
> the bathroom, she is not having any current
> problems *and nothing that would necessarily
> affect her functionally.*

(Emphasis added.) We read this opinion as acknowledging that petitioner has a problem with frequent trips to the bathroom and abdominal pain, but concluding that this problem does not "necessarily affect her functionally." Contrary to petitioner's contention, this opinion supports the hearing officer's RFC determination.

Petitioner next argues that the RFC determination was not supported by substantial evidence in the record because the hearing officer failed to consider the impact of petitioner's problems with numerous, chronic bowel movements and incontinence on her ability to engage in substantial gainful employment on a sustained basis. "When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (internal citations omitted). As the Seventh Circuit Court of Appeals has explained, "the ALJ must consider the claimant's

level of pain, medication, treatment, daily activities, and limitations, 20 C.F.R. § 404.1529(c), and must justify the credibility finding with specific reasons supported by the record[.]" *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

A claimant's allegations regarding the intensity, persistence, severity, and extent to which the pain or other symptoms of an impairment affect her ability to work "may not be discredited solely because they are not substantiated by objective evidence of the pain [or another symptom] itself or its severity[.]" *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996), *superseded by regulation in nonrelevant part*, 20 C.F.R. §§ 404.1527 (c)(2), 416.927(c)(2) (2012). Nevertheless, the claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Id.*

At the hearing, petitioner testified that she was having 10 to 15 bowel movements a day due to her Crohn's disease, and that she has accidents every day which require her to shower and change her clothes. These accidents can be triggered by activities such as getting up from a couch or chair or simply sneezing. Because of her difficulty with these issues, it is

difficult for her to make plans because she cannot predict when she will need to use the bathroom.

The hearing officer found petitioner's testimony not fully credible in Finding of Fact 7:

> After considering the medical evidence of record, the undersigned finds that [petitioner's] medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but that [petitioner's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible.

Petitioner argues that "no explanation was given as to what ways Ms. Tester's testimony was not credible, and there was no indication which parts of the testimony were accepted, as the finding indicated only a partial, rather than a full discrediting." We disagree. The finding indicates that the hearing officer was discrediting the "intensity, persistence, and limiting effects" of petitioner's symptoms. In other words, the finding does not discredit the existence of the symptoms themselves, but the degree to which they affected petitioner.

Regarding petitioner's symptoms of incontinence and frequent bowel movements, the hearing officer's findings contain several references to medical records in which physical exams and petitioner's own statements contradict her testimony regarding the intensity and limiting effects of this impairment.

This includes findings that petitioner denied having abdominal pain on 4 May 2011, 10 May 2011, and 27 September 2011; that petitioner had not taken anti-Crohn's medications in four years; and that her Crohn's disease had improved, that her renal function showed improvement, and that a physical exam on 27 September 2011 "showed abdomen without tenderness or organomegaly." These findings were supported by substantial evidence and, in turn, support the credibility finding that petitioner's testimony was inconsistent with objective medical findings in the record.

Petitioner interprets the hearing officer's finding that "[t]he available medical records do not show any ongoing treatment for Crohn's disease nor ongoing complaints at her doctors visits regarding significant bathroom frequency" as indicating that the hearing officer failed to consider any of petitioner's complaints of frequent bowel movements. However, the hearing officer was merely pointing out that the recent medical documentation was inconsistent with petitioner's claim that symptoms from her Crohn's disease and her bathroom frequency precluded her from working. In addition to records discussing the improvement in her Crohn's disease, the medical records, consistent with this finding, show that petitioner reported the frequency of her bowel movements on visits to her

doctor on 28 October 2004, 21 February 2005, 20 May 2005, 30 March 2006, 12 October 2006, 29 March 2007, 8 September 2008, and 30 October 2009.  In contrast, the reports from more recent doctors' visits on 21 November 2010, 28 April 2011, and 18 May 2011 do not contain any reference to or complaints regarding the frequency of bowel movements.

Despite frequent trips to the bathroom and some abdominal pain, there was still substantial evidence in the record to support the conclusion that petitioner has an RFC to engage in light work, as the hearing officer found.  Dr. Colantoni's report notes that she has a normal gait, full range of motion, ability to use her hands well, no atrophy, and normal range of motion and ability to perform the tasks associated with light work.  Dr. Colantoni also asserted that her abdominal pain and frequent bathroom trips would not "necessarily affect her functionally."  We conclude that the hearing officer's conclusion that petitioner can engage in light work is supported by substantial evidence in the record.

The question remains whether, given petitioner's RFC, the hearing officer erred in concluding that petitioner could engage in her past relevant work.  Petitioner first contends that defendant erred in taking official notice of the Dictionary of Occupational Titles ("DOT") of the U.S. Department of Labor and

failing to specifically cite the job description of an "admissions supervisor" as petitioner contends, was required by N.C. Gen. Stat. § 150B-30 (2013). Petitioner argues that without being notified of the exact job description, petitioner "had no ability, other than by speculating about the job description upon which the hearing officer relied, to demonstrate either that the description itself was faulty or that her residual capacity did not allow her to perform the duties described."

The hearing officer's order stated that petitioner's "work as a [sic] Admissions Supervisor is considered skilled and requires sedentary maximum sustained work capabilities as supported by the [DOT]." To determine what is meant by "skilled" and "sedentary" work, petitioner need only consult the physical exertion requirements as defined in 20 C.F.R. § 404.1567 (2014) and the skill requirements as defined in 20 C.F.R. § 404.1568 (2014). Alternatively, petitioner can consult the DOT itself for a specific job description. We fail to see how the hearing officer's failure to recite the job description in the order precludes petitioner or a reviewing court from determining the relevant information: the mental and physical demands of the job.

Petitioner also cites SSR 82-61, 1982 WL 31387 (Jan. 1, 1982) to suggest the hearing officer's job description was too general. However, SSR 82-61 provides three possible tests for determining whether a claimant retains the ability to perform her past relevant work. The hearing officer used the third test, which allowed her to rely upon the DOT to determine "[w]hether the claimant retains the capacity to perform the functional demands and job duties of the job *as ordinarily required by employers throughout the national economy*." (Emphasis added.)

SSR 82-61 acknowledges that the former job as actually performed by the claimant "may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." Nevertheless, under this test, the claimant should still be found "not disabled" if she is able to perform the job as defined in the DOT, even if she is unable to perform the job as actually required in her former position. *Id.* Petitioner's claimed inability to demonstrate that the DOT job description was not exactly the same as the job as actually performed by petitioner was, therefore, immaterial under this test.

Petitioner next argues that the hearing officer erred by omitting from the record two "Disability Determination

Explanation" reports. One evaluation was performed by Dr. A. K. Goel on 23 September 2011, and the second evaluation was performed by Dr. Robert Gardner on 16 November 2011. Petitioner contends that these reports were not considered by the hearing officer. However, DHHS points out that the hearing officer must have referenced these reports when her decision indicated petitioner was able to perform "light work with no climbing a ladder, rope or scaffold, . . . and avoidance from concentrated exposure to dusts/fumes/odors[,]" because those limitations are only mentioned in the two reports.

Since these reports were available to the hearing officer at the time of the hearing on 19 January 2012 and because we have not found any other document in the record containing the same limitations as listed in the RFC finding, it appears that the hearing officer did consider and rely upon the reports. The reports were also considered by the superior court, as it is undisputed that the petitioner submitted the reports to the superior court without objection. Thus, petitioner has failed to show that these reports were not considered by the hearing officer or the superior court.

In any event, petitioner argues that these reports were critical to her case because both evaluations determined that petitioner is unable to return to her previous work because she

is now limited to unskilled work. The 23 September 2011 report specified that petitioner cannot perform her past job because she is "limited to SRRTs [simple, routine, repetitive tasks] which precludes past work (SVP 4)."[2] The 16 November 2011 report noted that "[c]urrently, the claimant also has mental health restrictions and so therefore cannot return to her past (semi-skilled) work. She must return to other work."

The reports' findings that petitioner is limited to unskilled work was evidence that would support a finding that petitioner had certain mental limitations that reduced her ability to do her past relevant work, which is classified as "skilled." In determining a claimant's RFC, the agency must also consider mental capacity limitations.

> (c) *Mental abilities*. When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c) (2014).

---

[2]"Special vocational preparation, level 4," requires three to six months to learn the job.

Nevertheless, the same reports also contained findings supporting the conclusion that petitioner was not so limited. The 16 November 2011 report noted that "[o]verall, the totality of the medical evidence in file indicates that the clmt [sic] has the mental capacity to understand and follow instructions, sustain attention to perform tasks, interact w/ others in a work setting, and tolerate workplace stress as described herein." The reports' findings concerning petitioner's mental capacity are consistent with other evidence in the record, referenced in the hearing officer's decision, showing a lack of mental impairments. Additionally, both reports ultimately concluded that petitioner is not disabled.

Based upon our review of the entire record, the evidence in the "Disability Determination Explanation" reports that petitioner is limited to unskilled work is insufficient to warrant reversal of the hearing officer's conclusion, based on the entire record, that petitioner is able to return to her past work as an admissions supervisor. There is substantial evidence in the record that petitioner does not have mental impairments that would impair her from performing the tasks required for her prior position.

In conclusion, we hold that the superior court properly concluded that DHHS correctly utilized the five-step analysis

for disability determinations under 20 C.F.R. § 416.920 and that the final agency decision concluding that petitioner is not disabled is based upon substantial evidence in the record. Accordingly, we affirm.

Affirmed.

Judges STEPHENS and ERVIN concur.

Report per Rule 30(e).